Robert J. deBrauwere
rdebrauwere@pryorcashman.com
Joshua Weigensberg
jweigensberg@pryorcashman.com
PRYOR CASHMAN LLP
7 Times Square
New York, New York 10036
(212) 421-4100

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARSHAL ROSENBERG,<br><br>                Plaintiff,<br><br>  -against-<br><br>METROPOLIS GROUP, INC., JOHN DOES 1-10, JANE DOES 1-10 and XYZ COMPANIES 1-10,<br><br>              Defendants. | No.<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Marshal Rosenberg ("Rosenberg" or "Plaintiff"), by his attorneys Pryor Cashman LLP, alleges as follows as against Defendants Metropolis Group, Inc. ("Metropolis") John Does 1-10, Jane Does 1-10, and XYZ Companies 1-10:

## THE PARTIES

1.     Plaintiff Marshal Rosenberg is an individual with an address of 220 West 98th St., Apt. 3F, New York, New York 10025-5669.

2.     Upon information and belief, Defendant Metropolis Group, Inc. is a corporation organized and existing under the laws of the State of New York, with an address of 22 Cortlandt Street, 10th Floor, New York, New York 10007.

3.       Upon information and belief, Defendants identified as John Does 1-10 are individuals and/or entities that are not presently known, and the Complaint herein will be amended to include the name or names of these individuals or entities when such information becomes available.

4.       Upon information and belief, Defendants identified as Jane Does 1-10 are individuals who acted for, in concert with or through the named Defendants, and are subject to the jurisdiction of this Court.   The identities of the various Jane Does are not presently known, and the Complaint herein will be amended to include the name or names of these individuals when such information becomes available.

5.       Upon information and belief, Defendants identified as XYZ Companies 1-10, have, through their agents, servants and employees, acted for, in concert with, through, over or under the named Defendants, and are subject to the jurisdiction of this Court.   The identities of the various XYZ Companies are not presently known, and the Complaint herein will be amended to include the name or names of these companies when such information becomes available.

## <u>JURISDICTION AND VENUE</u>

6.       This is a civil action seeking, *inter alia,* damages and injunctive relief for copyright infringement under the Copyright Act, 17 U.S.C. § 101 *et seq.;* violations of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201 *et seq.*; violations of the Defend Trade Secrets Act, 18 U.S.C. 1836 *et seq.*; and trade secret misappropriation under New York common law.

7.       This Court has original subject matter jurisdiction of this action under 28 U.S.C. §§ 1331 and 1338(a) and supplemental jurisdiction over the state law claim asserted herein under 28 U.S.C. § 1367(a).

8. This Court has personal jurisdiction over the Defendants pursuant to CPLR § 302(a)(1), (2) and/or (3) in that Defendants transact business within New York and have committed acts of copyright infringement, DMCA violations, and misappropriation of trade secrets in New York by, *inter alia,* reproducing Plaintiff's copyrighted work in New York unlawfully and without authorization, preparing one or more derivative works thereof in New York unlawfully and without authorization, and misappropriating Plaintiff's trade secrets in New York, and/or Defendants have committed infringing acts outside of New York causing injury to Plaintiff in New York and/or Defendants regularly do or solicit business in New York and/or derive substantial revenue from goods used or services rendered in New York and/or expect or reasonably should expect their infringing conduct to have consequences in New York and derive substantial revenue from interstate commerce.

9. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) and/or 1400(a), in that the claims arise in this judicial district, where one or more of the Defendants, including Metropolis, regularly conducts business and may be found.

## FACTUAL ALLEGATIONS

### I.   Rosenberg's Software Framework and the Application for Metropolis

10. Plaintiff Rosenberg is a software designer and programmer.

11. Rosenberg has more than 23 years of experience developing software applications for the New York City construction industry.

12. By 2002, Rosenberg had developed a software framework to be used by companies in the area of construction expediting in New York City (the "Original Software").

13. Defendant Metropolis is in the New York City construction industry and offers permit expediting services along with other, related services.  In or around 2003, Rosenberg

licensed to Metropolis a version of the Original Software.   The version used by Metropolis is named Metropolis – Metro.exe (the "Application").

14.     Over more than a decade, Rosenberg put considerable work into the Application. The Application contains more than 66,000 lines of code, more than 80 screens or forms, more than 40 reports, and numerous other features.

15.     Although Metropolis had a license to use the Application, Rosenberg remained the owner of its copyright and the owner of the Original Software upon which the Application was modeled.

16.     Indeed, Rosenberg included in the Application a copyright notice identifying himself as the owner of the Application (most recently stating "Copyright © 2002-2017 – Marshal Rosenberg / All Rights Reserved") and an additional notice that the Application "may not be reproduced, published, or disclosed to others without [Rosenberg's] authorization."

17.     Rosenberg and Metropolis maintained a business relationship until August 2017. During that time, Rosenberg would regularly update, fix, and improve upon the Application.

## II.     Rosenberg's Copyright Registrations and Protection of His Source Code

18.     Rosenberg has taken a number of steps to register and protect his ownership of and interests in the Application and its underlying source code, which is a trade secret.

19.     Rosenberg has obtained a copyright registration with the United States Copyright Office (the "Copyright Office") for the Original Software and two copyright registrations for the Application (the "Registrations").

20.     The first registration, bearing registration number TX0008510881, is for the very first version of the Original Software.   The first registration issued from the United States Copyright Office in late April 2018.

21.     The second registration, bearing registration number TX0008486566, is for the 2003 version of the Application that was the very first version to be installed on Metropolis's system.

22.     The third registration, bearing registration number TX0008396998, is for the 2017 version of the Application that was the very last version to be installed on Metropolis's system (the "Final Version Registration").

23.     Rosenberg regards and has treated aspects of the Application, including the source code, as a trade secret.

24.     To protect his source code, Rosenberg applied branding protections to the Application (the "Branding").   The Branding worked to prevent a third party from revealing or producing key portions of Rosenberg's source code through de-compilation (*i.e.*, converting a software program's "compiled" code into human-readable source code) using a program known as ReFox.

25.     Upon information and belief, ReFox is the only commercially available program that can de-compile the Application directly into its Source Code programming language (Visual FoxPro).

26.     However, the branding protections that Rosenberg employed can be circumvented through various means including the use of a "cracked" version of ReFox (which can be obtained online).

27.     Without circumventing the Branding, a user could only access Rosenberg's source code by using the ReFox program licensed to Rosenberg and entering a password.

28.     Further reflecting the fact that Rosenberg has treated his source code as a secret, when he applied for the above-described copyright registrations, Rosenberg, pursuant to the

Copyright Office's Circular 61 for the Copyright Registration of Computer Programs, sent written notice to the Copyright Office that his source code contains trade secrets and submitted only a portion of the source code in order to satisfy the deposit requirement.

### III.    Metropolis's Development of an Infringing Replacement Program

29.    In 2005, a third-party contact called Rosenberg and informed him that a new partner had joined Metropolis.   The contact told Rosenberg that the new partner had expressed an interest in replacing the Application, but upon being quoted a cost of over $300,000 by a vendor to create a replacement for the Application, the new partner stated, in sum and substance, that he might instead "just find someone to decompile" the Application.

30.    By the fall of 2015, Metropolis's requests to Rosenberg for maintenance of the Application began to slow considerably.

31.    In June of 2017, immediately after Rosenberg installed the version of the Application that is the subject of the Final Version Registration on Metropolis's system, a Metropolis representative emailed Rosenberg asking who had authorized Rosenberg to update the application.   The question from the representative was highly unusual to Rosenberg, as the services he had rendered to Metropolis for more than a dozen years had regularly and necessarily included installing updates of the Application.

32.    In August of 2017, a Metropolis representative told Rosenberg that it would no longer be using the Application.   During that conversation, the Metropolis representative told Rosenberg that Metropolis would instead be using a "new" program (the "Replacement Program").

33.    Rosenberg asked the representative who had developed the Replacement Program. The representative refused to provide the name of the developer, but she indicated that the developer was a third party (the "Third-Party Developer").

34.     Upon information and belief, there is no commercially available product besides the Application that provides the utility, performance and efficiency required by Metropolis.

35.     Upon information and belief, through the Third-Party Developer or on its own, Metropolis reproduced and/or modified protectable elements of the Application, including, without limitation: its source code; the integration, presentation, and organization of data; data dictionary; inter-modular relationships; screens; reports; report generating processes; routines; and processes for integrating with New York City agency systems.

36.     Upon information and belief, through the Third-Party Developer or on its own, Metropolis also made substantial alterations and additions to the Application, in violation of Rosenberg's rights.

37.     Upon information and belief, to accomplish the above-mentioned reproduction, alteration, and additions to the Application, Metropolis, through the Third-Party Developer or on its own, circumvented the Branding that Rosenberg applied to the Application.

## VI.     Rosenberg's Diligence Efforts Before Bringing This Suit

38.     On October 16, 2017, counsel for Rosenberg wrote to Metropolis expressing Rosenberg's concern that his rights had been violated and requesting that Metropolis provide certain basic information, including the identity of the Third-Party Developer and technical descriptions regarding the Replacement Program and its development.   A true and correct copy of the October 16, 2017 letter is annexed hereto as **Exhibit A**.

39.     On October 27, 2017, counsel for Metropolis responded.   Metropolis's counsel provided none of the information requested, and would not identify the Third-Party Developer. A true and correct copy of the October 27, 2017 letter is annexed hereto as **Exhibit B**.

40.     On November 8, 2017, counsel for Rosenberg responded to certain false statements and legal arguments made in Metropolis's October 27, 2017 letter, and reiterated the information demands.   A true and correct copy of the November 8, 2017 letter (without its enclosures) is annexed hereto as **Exhibit C**.

41.     Metropolis's counsel responded on December 13, 2017, again failing to provide any meaningful response to Rosenberg's information request in its response.    For example, while Metropolis's counsel included in its letter portions of screenshots from emails with the Third-Party Developer, it purposefully omitted from those screenshots any information that would identify the Third-Party Developer, and it again failed to otherwise identify the Third-Party Developer.    A true and correct copy of the December 13, 2017 letter (without its enclosure) is annexed hereto as **Exhibit D**.

42.     Realizing that the Third-Party Developer was likely a company doing business under the name Door3 Business Applications ("Door3"), Rosenberg, through his counsel, wrote Metropolis's counsel on January 30, 2018 to confirm Door3's involvement in the development of the Replacement Program, address arguments made in the December 13, 2017 letter, and reiterate his information demands.   A true and correct copy of the January 30, 2018 letter (without its enclosures) is annexed hereto as **Exhibit E**.    In its March 15, 2018 response, Metropolis's counsel would not confirm that Door3 was the Third-Party Developer, and did not otherwise respond to Rosenberg's information requests.    A true and correct copy of the March 15, 2018 letter (without its enclosure) is annexed hereto as **Exhibit F**.

43.     In an effort to obtain confirmation of Door3's involvement and safeguard his rights in the Application, Rosenberg, through his counsel, reached out separately to counsel for Door3. Counsel for Door3 offered only to allow Rosenberg to conduct an in-person inspection of source

code of a program Door3 developed for Metropolis, without confirming the program in question was in fact the Replacement Program.   Door3 would not provide anything more, such as written information about the Replacement Program or an opportunity for Rosenberg to view the Replacement Program running on a device.

44.     After Rosenberg's counsel noted that an in-person inspection of the source code would be unproductive and impractical given that the Application consists of more than 66,000 lines of code and more than 300 related components, Door3's counsel stated improbably that Rosenberg should require only a "quick inspection" of the offered code "in the space of an hour." Referring to Rosenberg's requests for information as "unreasonable demands" and a "nuisance," Door3's counsel stated that "our client would be willing to look at the question with fresh eyes" if Rosenberg "would be willing to advance our legal fees," and that "for a retainer of $7,500 we could likely generate some kind of report/response."

## FIRST CAUSE OF ACTION
### (Copyright Infringement)

45.     Plaintiff hereby repeats and realleges the foregoing Paragraphs of the Complaint as if fully set forth herein.

46.     The Original Software is an original work of authorship, copyrightable under 17 U.S.C. § 102.   The Application is a derivative work of the Original Software.

47.     Plaintiff owns the copyrights in and has the exclusive right to exploit and administer both the Original Software and the Application in the United States.   As such, Plaintiff has the exclusive rights to, *inter alia*, reproduce the Original Software and the Application and create derivative works therefrom.

48.     Plaintiff also owns the Registrations, which, as noted above, are for the Original Software, the first version of the Application installed on Metropolis's system, and the very last version of the Application installed on Metropolis's system.

49.     As set forth above, Defendants have infringed Plaintiffs exclusive copyright rights in the Original Software and the Application by reproducing and modifying the Application in connection with the creation of the Replacement Software.

50.     The aforesaid acts of infringement by Defendants were willful, intentional, and purposeful, and in disregard of and with indifference to the rights of Plaintiff.

51.     As a direct and proximate result of the infringement by Defendants, Plaintiff is entitled to damages in an amount to be proven at trial, including his actual damages and Defendant's profits attributable to the infringement, or statutory damages, pursuant to 17 U.S.C. § 504.

52.     Plaintiff is further entitled to attorneys' fees and costs pursuant to 17 U.S.C. § 505.

53.     As a direct and proximate result of the foregoing acts and conduct, Plaintiff has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.   Unless enjoined and restrained by this Court, Defendants will continue to infringe Plaintiff's rights in the Original Software and the Application.   Plaintiff is entitled to permanent injunctive relief.

## SECOND CAUSE OF ACTION
### (Violation of the Digital Millennium Copyright Act)

54.     Plaintiff hereby repeats and realleges the foregoing Paragraphs of the Complaint as if fully set forth herein.

55.     As set forth above, Plaintiff employed the technological protection measure of Branding, which prevented third parties from revealing or producing key portions of the

Application's source code using the ReFox program, which, upon information and belief, is the only commercially available program that could possibly de-compile the Application and thereby directly reveal its source code.

56.     Upon information and belief, Defendants intentionally and/or knowingly circumvented technological measures, specifically the Branding, that effectively controlled access to the Application's source code, which is protected under Title 17, and thereby violated 17 U.S.C. § 1201(a)(1)(A).

57.     Defendant's conduct damaged Plaintiff, in an amount to be proven at trial.

58.     Plaintiff is entitled to, without limitation, his actual damages and the profits of the Defendants attributable to the violation, as set forth in 17 U.S.C. § 1203(c)(2).

### THIRD CAUSE OF ACTION
### (Violation of the Defend Trade Secrets Act)

59.     Plaintiff hereby repeats and realleges the foregoing Paragraphs of the Complaint as if fully set forth herein.

60.     Plaintiff has used and has intended to use the Original Software and/or derivative works based thereon in interstate commerce.

61.     Elements of the Original Software and Application, including the source code, constitute trade secrets under 18 U.S.C. § 1839(3), because they are "business, scientific, technical . . . or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes."

62.     Plaintiff has taken reasonable measures to protect and keep secret his trade secrets by, without limitation, applying Branding to the Application, including notices to licensees that prohibited reproduction, publication, or disclosure of the Application, and submitting excerpted sections of his source code to satisfy the Copyright Office's deposit requirements.

63.     Upon information and belief, Defendants misappropriated Plaintiff's trade secrets within the meaning of 18 U.S.C. §§ 1836(b) and 1839(5)(A) by, without limitation, acquiring Plaintiff's source code with the knowledge or reason to know that the source code was acquired by improper means.

64.     Upon information and belief, Defendants further misappropriated Plaintiff's trade secrets within the meaning of 18 U.S.C. §§ 1836(b) and 1839(5)(B) by, without limitation, disclosing and using Plaintiff's trade secrets without Plaintiff's express or implied consent, with the knowledge that Plaintiff's source code was a trade secret and/or the knowledge that Plaintiff's source code was acquired by improper means.

65.     Pursuant to 18 U.S.C. § 1836(b)(3), Plaintiff is entitled to, without limitation, his actual losses, an award in the amount of Defendants' unjust enrichment caused by the misappropriation of Plaintiff's trade secrets, and exemplary damages based on Defendants' willful and malicious misappropriation.

66.     Plaintiff is also entitled to a preliminary and permanent injunction pursuant to 18 U.S.C. § 1836(b)(3).

### FOURTH CAUSE OF ACTION
### (Trade Secret Misappropriation under New York Common Law)

67.     Plaintiff hereby repeats and realleges the foregoing Paragraphs of the Complaint as if fully set forth herein.

68.     Elements of the Original Software and the Application, including the source code, are processes and compilations conferring upon Plaintiff a competitive advantage.   Such elements are not known to individuals or entities other than Plaintiff, and Plaintiff took the above-stated measures to guard their secrecy.   It took Plaintiff decades to develop the Application, including the source code, and it would similarly take a third party years, and hundreds of

thousands of dollars (if not millions) to develop similar elements independently.   As such, such elements, including Plaintiff's source code, constitute trade secrets under New York law.

69.     Upon information and belief, Defendants accessed Plaintiff's trade secrets, including the source code, by, without limitation, circumventing the protections Plaintiff put in place preventing such access.   In so doing, Defendants misappropriated Plaintiff's trade secrets.

70.     Defendants' misappropriation of Plaintiff's trade secrets is ongoing.   Upon information and belief, Metropolis continues to use the Replacement Program, which is based upon and/or incorporates the Application, including Plaintiff's source code, which Defendants wrongfully accessed.

71.     Defendants' misappropriation of Plaintiff's trade secrets has damaged Plaintiff, in an amount to be proven at trial.

72.     Plaintiff is also entitled to preliminary and permanent injunctive relief preventing Defendants from disclosing or continuing to use Plaintiff's source code.

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

1.     That Defendants be permanently enjoined and restrained from reproducing or distributing the Application, and from disclosing or using any trade secret of Plaintiff;

2.     That Defendants be ordered to destroy all copies of the Replacement Program, in whole or in part, including all copies residing on digital media or computer hardware;

3.     That Defendants be directed to file with this Court and to serve on Plaintiff, within thirty (30) days after service upon Defendants of this Court's order or injunction issued in this action, a written report by Defendants, signed under oath, setting forth in detail the manner in which Defendants have complied with the injunction and order of destruction;

4.     That Defendants be required to account for and pay over to Plaintiff all profits derived from their infringement of the Application;

5.     That, in addition to recovery of profits attributable to the infringement of the Application, Plaintiff be awarded all damages to which Plaintiff may be entitled in such amounts as may be found, and/or be awarded statutory damages as provided for under Title 17;

6.     That Plaintiff be awarded its costs, including reasonable attorneys' fees;

7.     That Plaintiff be awarded prejudgment interest according to law.

8.     That the Court award Plaintiff any and all further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury, pursuant to Fed. R. Civ. P. 38(b), on all issues so triable.

Dated:   New York, New York
         May 31, 2018

                                    __S/ Robert J. deBrauwere_____
                                    Robert J. deBrauwere
                                    rdebrauwere@pryorcashman.com
                                    Joshua Weigensberg
                                    jweigensberg@pryorcashman.com
                                    PRYOR CASHMAN LLP
                                    7 Times Square
                                    New York, New York 10036
                                    (212) 421-4100

                                    *Attorneys for Plaintiff*