Robert J. deBrauwere
rdebrauwere@pryorcashman.com
Joshua Weigensberg
jweigensberg@pryorcashman.com
Giovanna Marchese
gmarchese@pryorcashman.com
PRYOR CASHMAN LLP
7 Times Square
New York, New York 10036
(212) 421-4100
*Attorneys for Plaintiff Marshal Rosenberg*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARSHAL ROSENBERG, | ECF Case |
| Plaintiff, | Civil Action No. 1:18-cv-04830-AKH |
| -against- | |
| METROPOLIS GROUP, INC., JOHN DOES 1-10, JANE DOES 1-10 and XYZ COMPANIES 1-10, | |
| Defendants. | |

## PLAINTIFF MARSHAL ROSENBERG'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT METROPOLIS GROUP, INC.'S MOTION TO DISMISS

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ................................................................................... 1

RELEVANT FACTS .................................................................................................... 3

    I.     ROSENBERG'S SOFTWARE ....................................................................... 3

    II.    ROSENBERG'S PROTECTION OF HIS SOFTWARE ................................. 4

    III.   METROPOLIS' INFRINGEMENT OF
           ROSENBERG'S INTELLECTUAL PROPERTY RIGHTS ........................... 6

ARGUMENT ............................................................................................................... 10

    I.     LEGAL STANDARD .................................................................................. 10

    II.    ROSENBERG HAS SET FORTH HIS COPYRIGHT
           INFRINGMENT CLAIM WITH SUFFICIENT DETAIL ........................... 12

         A.    Governing Standards ...................................................................... 12

         B.    Defendant's Argument that Rosenberg Must Identify the Original
             Elements of the Application with Particularity Has No Legal Basis .................... 12

         C.    Rosenberg Adequately Alleges the Acts by which
             Metropolis Infringed his Copyright in the Application ...................... 15

    II.    ROSENBERG HAS STATED A DMCA CLAIM ...................................... 18

    III.   ROSENBERG HAS ALLEGED A CLAIM FOR VIOLATION OF THE DTSA ........ 20

    IV.   ROSENBERG HAS STATED A CLAIM FOR
            COMMON LAW TRADE SECRET MISAPPROPRIATION ................... 22

CONCLUSION ........................................................................................................... 25

i

## **TABLE OF AUTHORITIES**

**CASES**                                                                          **PAGE(s)**

*Arista Records, LLC v. Doe 3,*
    604 F.3d 110 (2d Cir. 2010) .................................................................... 11, 20

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .................................................................... 10, 11, 20

*Bancorp Servs., LLC v. American Gen. Life Ins. Co.,*
    No. 14-CV-9687 (VEC), 2016 WL 4916969 (S.D.N.Y. Feb. 11, 2016) .......................... 22, 24

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) .................................................................... 10, 11

*BWP Media USA Inc. v. Hollywood Fan Sites, LLC,*
    69 F. Supp. 3d 342 (S.D.N.Y. 2014) .................................................................... 11

*C.D.S., Inc. v. Zetler,*
    198 F. Supp. 3d 323 (S.D.N.Y. 2016) .................................................................... 24

*Cognotec Servs., Ltd. v. Morgan Guar. Tr. Co. of N.Y.,*
    862 F. Supp. 45 (S.D.N.Y. 1994) .................................................................... 12, 13, 14, 16

*Computer Assocs. Int'l, Inc. v. Altai, Inc.,*
    982 F.2d 693 (2d Cir. 1992) .................................................................... 12, 16

*Dawkins v. Jones,*
    No. 03CIV.0068 (AJP), 2004 WL 574726 (S.D.N.Y. Mar. 22, 2004) .................................. 18

*DiFolco v. MSNBC Cable L.L.C.,*
    622 F.3d 104 (2d Cir. 2010) .................................................................... 11

*Egletes v. Law Offices Howard Lee Schiff, P.C.,*
    No. 3:10-CV-00641 (CSH), 2010 WL 3025236 (D. Conn. July 30, 2010) .......................... 18

*Elektra Entm't Grp., Inc. v. Santangelo,*
    No. 05 CIV 2414 (CM), 2005 WL 3199841 (S.D.N.Y. Nov. 28, 2005) .......................... 15, 20

*Erickson v. Pardus,*
    551 U.S. 89 (2007) .................................................................... 11

*Facebook, Inc. v. Power Ventures, Inc.,*
    No. C08-5780 JF (RS), 2009 WL 1299698 (N.D. Cal. July 23, 2009) .................................. 18

**CASES**                                                                 **PAGE(s)**

*Faiveley Transp. Malmo AB v. Wabtec Corp.*,
   559 F.3d 110 (2d Cir. 2009) ....................................................................22, 23

*Gal v. Viacom Int'l, Inc.*,
   403 F. Supp. 2d 294 (S.D.N.Y. 2005) ..................................................................17

*Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*,
   206 F. Supp. 3d 869 (S.D.N.Y. 2016) ............................................................15, 16

*Home & Nature, Inc. v. Sherman Specialty Co.*,
   322 F. Supp. 2d 260 (E.D.N.Y. 2004)............................................................14, 15

*Lefkowitz v. McGraw-Hill Glob. Educ. Holdings, LLC*,
   23 F. Supp. 3d 344 (S.D.N.Y. 2014) ...................................................................11

*Lipton v. Nature Co.*,
   71 F.3d 464 (2d Cir. 1995) ..................................................................................17

*Medtech Prods. Inc. v. Ranir, LLC*,
   596 F. Supp. 2d 778 (S.D.N.Y. 2008) .................................................................22

*Rogers v. Koons*,
   960 F.2d 301 (2d Cir. 1992) ................................................................................17

*SD Prot., Inc. v. Del Rio*,
   498 F. Supp. 2d 576 (E.D.N.Y. 2007)..................................................................23

*Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*,
   118 F.3d 955 (2d Cir. 1997) ................................................................................12

*Software for Moving, Inc v. Frid*,
   No. 09 CIV 4341 (DLC), 2010 WL 2143670 (S.D.N.Y. May 27, 2010) ............ 12, 13, 14, 16

*Stewart v. World Wrestling Fed'n Entm't, Inc.*,
   No. 03 CV 2468 (RLC), 2005 WL 66890 (S.D.N.Y. Jan. 11, 2005)....................24

*Telephone Mgmt. Corp. v. Barclays Servs. Corp.*,
   No. 11 CIV. 8570 (DAB), 2013 WL 1344706 (S.D.N.Y. Mar. 28, 2013)............11

*United States v. Agrawal*,
   726 F.3d 235 (2d Cir. 2013) ................................................................................21

*Universal City Studios, Inc. v. Corley*,
   273 F.3d 429 (2d Cir. 2001) ................................................................................19

**CASES**                                                                                          **PAGE(s)**

*Yager v. Vignieri*,
     No. 16CV9367 (DLC), 2017 WL 4574487 (S.D.N.Y. Oct. 12, 2017) ...................................21

## RULES & STATUTES

Fed. R. Civ. P. 12(b)(6) ................................................................................................ 1, 18, 24

17 U.S.C. § 101 ...............................................................................................................17

17 U.S.C. § 1201(a)(1) ....................................................................................................19

17 U.S.C. § 1201(a)(3)(A) ...............................................................................................19

17 U.S.C. § 1201(a)(3)(B) ...............................................................................................19

Plaintiff Marshal Rosenberg ("Rosenberg" or "Plaintiff") respectfully submits this Memorandum of Law in Opposition to the motion brought by defendant Metropolis Group, Inc. ("Metropolis" or "Defendant") on August 27, 2018, seeking the dismissal of Rosenberg's complaint in this action (the "Complaint" or "Compl.") pursuant to Fed. R. Civ. P. 12(b)(6) (the "Motion" or "Mot."), and respectfully asks that the Motion be denied in its entirety.

## PRELIMINARY STATEMENT

The Motion is a strikingly cynical attempt by Metropolis to avoid disclosure of, and accountability for, its misconduct. Despite Metropolis' baseless arguments and unsubstantiated challenges to the sufficiency of the Complaint, Rosenberg has more than met his pleading burden under the Federal Rules, and the Motion must be denied.

Rosenberg has been a software developer for more than 35 years and has created numerous original software programs, including, in 2002, a software framework for use by construction expeditors to automate and streamline business operations. In 2003, Rosenberg created a derivative version of this software, "Metropolis – Metro.exe," the use of which he licensed to Metropolis, a construction expeditor and one of Rosenberg's clients.

Rosenberg spent more than fourteen years regularly updating and improving upon his software framework and the "Metropolis – Metro.exe" application, each time imbuing the application with original and protectable expression. The "Metropolis – Metro.exe" software is a feature-rich, sophisticated, customized application that includes more than 66,000 lines of code, more than 80 screens or forms, more than 40 reports, and numerous other features, all of which were created exclusively by Rosenberg and are wholly original to him. Rosenberg retained his ownership of the copyright in his software, including every subsequent updated version.

Rosenberg's ownership of the copyright in his software has always been very clear to Metropolis, as it bears a copyright notice identifying Rosenberg as the owner and stating that it "may not be reproduced, published, or disclosed to others without [Rosenberg's] authorization." Notwithstanding, in June 2005, one of Rosenberg's contacts informed him that a new partner at Metropolis, after learning that creating software to replace Rosenberg's would cost more than $300,000, bragged that Metropolis would merely "find someone to decompile" Rosenberg's software to create an infringing, slavish copy of Rosenberg's program (and, as properly alleged in the Complaint, Metropolis did just that).  To protect certain key aspects of the source code he had created, Rosenberg employed technological measures to prevent unauthorized third parties from viewing and reproducing portions of his software.

Starting in 2015, Rosenberg noticed his previously amiable and engaging relationships and rapport with Metropolis representatives, developed over the years through common and regular interactions, began to feel inhibited and restrained, though Metropolis representatives continued to praise and commend his work.  In June 2017, Rosenberg grew increasingly suspicious when his installation of a minor bug-fix on Metropolis' system, which was common and routine (having been done innumerable times for more than a decade), was suddenly questioned and challenged without explanation.  In August 2017, Metropolis informed Rosenberg that, despite the company's deep appreciation for his work over the years, Metropolis was going to use a "new" program.

Well aware that a Metropolis executive had expressed an intent to unlawfully decompile his software, and in view of his awkward interactions with, and the shift in behavior of, some of Metropolis' personnel, Rosenberg sought basic information from Metropolis regarding the allegedly "new" software, to determine if his rights had been violated.  Over the course of six

months of stonewalling by Metropolis representatives, through numerous tortured exchanges between the parties' counsel, Metropolis refused to identify even the developer it used.

What Metropolis did admit, however, and which is clearly articulated in the Complaint and attachments thereto, was that in "creating" its replacement program (*i.e.*, designing an infringing version of Rosenberg's software): it provided its developer access to Rosenberg's source code, screens and reports, which it then copied; the developer sought to review portions of Rosenberg's software protected by technological measures; and it violated the restrictions set forth by Rosenberg in the copyright notice.

Rosenberg eventually independently identified Metropolis' developer after conducting a simple Google search for the services required to create an unauthorized version of his software, and deducing that the first company the Google search yielded was an entity that maintained offices in the same office building, and on the same floor, as Metropolis.  This developer stated that it was willing to divulge certain aspects of the replacement program, provided Rosenberg paid an up-front "retainer" of $7,500.  Refusing to give into this nefarious exploitation, Rosenberg brought the current action.

The Court should not countenance Metropolis' transparently evasive and baseless Motion, as the facts alleged in the Complaint easily satisfy the pleading requirements, and Rosenberg respectfully requests that the Motion be denied in its entirety.

## RELEVANT FACTS

## I.    ROSENBERG'S SOFTWARE

Rosenberg is a successful software developer with decades of experience creating software for the construction industry.  Compl. (ECF Docket No. 4) ¶¶ 10-11.  Among the computer programs he has developed is a software framework for use by construction expeditors,

which he created in 2002 (the "Original Software"). *Id.* ¶ 12. The Original Software is used in interstate commerce. *Id.* ¶¶ 12, 60.

Metropolis, the defendant herein, is a construction expeditor and one of Rosenberg's former clients. *Id.* ¶ 13. In or around 2003, Rosenberg licensed a version of the Original Software to Metropolis. *Id.* The version that he licensed to Metropolis was named "Metropolis – Metro.exe" (the "Application"). *Id.* Metropolis used the Application until 2017. *Id.* ¶ 32.

Over the 14-year period that Metropolis used the Application, Rosenberg continued to develop and refine the underlying Original Software and the Application. *Id.* ¶ 14. The Application now includes more than 66,000 lines of code, more than 80 screens or forms, more than 40 reports, and numerous other features, all of which were created exclusively by Rosenberg and are wholly original to him. *Id.* ¶¶ 12-14, 46. No commercially available product contains the same expression of the elements and components that comprise the Application. *Id.* ¶ 34; Compl. Ex. A, at 1.

Rosenberg is and always has been the exclusive owner of the copyright in the Application and the Original Software on which the Application is based. *Id.* ¶ 15. Metropolis operated the Application pursuant to a license permitting it to use the Application. *Id.* ¶¶ 13, 15.

## II.   ROSENBERG'S PROTECTION OF HIS SOFTWARE

Rosenberg has taken a number of measures to protect his rights in the Application and the Original Software. He obtained copyright registrations with the United States Copyright Office for the Original Software (registration no. TX0008510881) and two versions of the Application, one for the first version of the Application installed on Metropolis' system (registration no. TX0008486566), and the other for the most recently installed version (registration no. TX0008396998). *Id.* ¶¶ 19-22. The Application also includes a copyright notice identifying

Rosenberg as the owner and stating that it "may not be reproduced, published, or disclosed to others without [Rosenberg's] authorization." *Id.* ¶ 16.

Rosenberg also protects his programs using technological measures. Specifically, as relevant here, he employed a type of technological protection called "Branding" through a program named ReFox. *Id.* ¶ 24. This was implemented to prevent third parties from revealing or producing key portions of Rosenberg's source code through de-compilation (*i.e.*, converting a software program's "compiled" code into human-readable source code), which in turn helps to prevent unauthorized viewing and reproduction of key parts of the Application's source code. *Id.*[1]

However, as with a physical padlock, the Branding protection can be "lock-picked" by unscrupulous actors. While the Branding prevents ReFox from converting object code into source code, there are numerous ways that ReFox Branding can be circumvented, including the use of an illegal "cracked" version of ReFox (readily available on the Internet). *Id.* ¶¶ 25-26. Without circumventing the Branding protections, the only lawful alternative to view and reproduce the protected parts of the source code would be to satisfy the password requirements on Rosenberg's own copy of the ReFox program. *Id.* ¶ 27.

The above-noted protections, including the warning on Rosenberg's copyright notice and the Branding protections, also served to protect the aspects of the Application that constitute trade secrets. Such trade secrets include processes, procedures, and code (including but not limited to the source code protected by the Branding) developed exclusively by Rosenberg and

---

[1] Source code is a collection of code, sometimes with comments, containing human-readable text instructions for the actions the computer will perform. However, while human beings can read source code, computers cannot. Therefore, source code is generally translated into what is known as compiled code or object code, which can be read by the computer. Conversely, a third party wishing to clone or alter a computer program will generally want to convert the program's compiled or object code back to its human-readable source code.

not featured in any other commercially available, competing program.  *Id*. ¶¶ 34, 61; *see also id*. at ¶¶ 18, 23, 28, 68.  Rosenberg also protected those trade secrets when he registered his copyright interests in the Application and Original Software, by sending written notice to the Copyright Office that his source code contained trade secrets and submitting only a portion of the source code to satisfy the deposit requirement.  *Id*. ¶ 28.

In its Opposition, to try to justify its illegal circumvention of Rosenberg's protections, Metropolis asserts, "Plaintiff admits that Metropolis had a lawful right and license to use <u>and access</u> the software."  Opp. at 16, 18 (emphasis added).  That is an invention out of thin air, and it is false.  Metropolis did not have a right or license to "access" the Application, whatever that means, and Rosenberg has not admitted in the Complaint or otherwise any right or license to "access."

**III.   METROPOLIS' INFRINGEMENT OF**
**          ROSENBERG'S INTELLECTUAL PROPERTY RIGHTS**

Rosenberg first became aware of Metropolis' intention to develop its own unauthorized version of the Application years ago.  In 2005, one of his contacts informed him that a new partner at Metropolis had expressed an interest in replacing the Application.  *Id*. ¶ 29.  The contact warned Rosenberg that, after a vendor quoted a cost of more than $300,000 to create a replacement for the Application, the new partner bragged, in sum and substance, that he might instead "just find someone to decompile" the Application, meaning surreptitiously access the Application's source code and create an unauthorized derivative program based on Rosenberg's work.  *Id*.

In August of 2017, a Metropolis representative revealed to Rosenberg that Metropolis would be using a "new" program (the "Replacement Program") instead of the Application.  *Id*. ¶ 32.  The Metropolis representative indicated that a third-party developer (the "Developer")

6

had created the Replacement Program, but when Rosenberg asked who the Developer was, the representative refused to tell him. *Id.* ¶ 33.

Rosenberg became concerned that the Replacement Program was an unauthorized copy or unauthorized derivative of his Application. As noted, there is no commercially available alternative to the Application, and to develop one from scratch would be a substantial and expensive undertaking, as Rosenberg himself spent more than a decade creating the tens of thousands of lines of code, dozens of screens, dozens of reports, and numerous other essential features of the Application. *See* page 4 *supra*. Rosenberg was also aware of Metropolis' previously expressed intention specifically to create an unauthorized derivative of his Application. *See* Compl. ¶ 29. These facts, coupled with Metropolis' peculiar refusal to tell him who developed the Replacement Program, led Rosenberg to engage in due diligence, through counsel, to determine whether his rights had been violated through the creation of the Replacement Program.

That due diligence began in October 2017. Although counsel for Metropolis and the Developer have stonewalled Rosenberg at nearly every opportunity, their responses to Rosenberg's counsel confirmed the following additional facts revealing that Metropolis (and likely the Developer) infringed Rosenberg's copyrights, circumvented the Branding protections or caused them to be circumvented, and misappropriated Rosenberg's trade secrets.

First, Metropolis admitted that it gave the Developer access to the Application for the Developer to use when creating the Replacement Program. *See* Compl. Ex. D at p. 3 ("The developer reported that it noticed certain source code [of the Application] was walled-off in this

manner.").[2]  It further admitted that as part of the development of the Replacement Program, the Developer had <u>accessed the Application's source code specifically</u>, although Metropolis added that the Developer "reported" that it had not accessed the portions of the source code protected by the Branding:

> After noticing that prior source code created for and at the direction of Metropolis was behind such password protection or encryption, the developer reported that it simply moved on with its commissioned work and wrote its own code to support Metropolis's business.

*Id.*  Counsel for Rosenberg pointed out that Metropolis' admission implied that the Developer referenced Rosenberg's Application while designing the Replacement Program, and, at a minimum, likely copied other aspects of the Application, non-branded source code, screens and reports.  *See* Compl. Ex. E at pp. 2-3.  Subsequently, counsel for Metropolis did not deny that the Developer had copied those other (*i.e.*, non-branded) aspects of the Application, instead arguing only that the Branding-protected code had not been copied and that certain specific aspects of the Replacement Program differ from the Application. S*ee* Compl. Ex. F at pp. 2-3.

Second, while Metropolis <u>refused</u> to identify the Developer until Rosenberg filed this lawsuit – and in fact edited the portions of electronic communications it provided to Rosenberg, so that the Developer's name would not be revealed (*see* Compl. Ex. D at pp. 3-4) – Rosenberg independently determined that the Developer was likely a company called Door3 Business Applications ("Door3").  Compl. ¶ 42.  Door3 is a company that advertises itself as a provider of FoxPro conversion services, *i.e.*, precisely the service needed to copy the Application, which is written in the Visual FoxPro programming language, to a different programming language.

---

[2] The only way a developer can "notice" that certain source code was not accessible is by attempting to access the code through a decompiler, which converts the object code to source code and reveals the program's protectable elements, which can then be copied, both literally and non-literally.

*Id.* ¶ 25; Compl. Ex. E at pp. 1-2.  Door3's counsel confirmed that it had done work on a program for Metropolis.  *Id.* ¶ 43.  However, Door3 was unwilling to provide any written information about the program beyond offering Rosenberg a "quick inspection" of tens of thousands of lines of code (a self-evidently unreasonable and unhelpful suggestion) – that is, unless Rosenberg was willing to pay Door3's lawyers for information.  *Id.* ¶ 44.[3]

Due to Metropolis' (and Door3's) stonewalling responses, Rosenberg was unable to learn anything further about the Replacement Program through his counsel's communications with Metropolis' counsel.  Metropolis never responded to information requests about basic, general, non-confidential information, many of which were made repeatedly, such as requests for the identity of the Developer (as noted above), for technical descriptions of the Replacement Program's system architecture (*e.g.*, programming language) and programming procedures, and for a description of the parts or aspects of the Application that were used in the development of the Replacement Program.  *See* Compl. Ex. A at p. 2, Ex. C at pp. 3-4, Ex. E at p. 4.  Metropolis refused Rosenberg's multiple requests to view a running copy of the Replacement Program.  *See* Compl. Ex. A at p. 2, Ex. C at p. 4; Ex. E at p. 4.  Metropolis even denied having had any "business dealings or communications with [Rosenberg] in 2017" and suggested the most recent registered version of the Application was not installed on its system (Compl. Ex. B at pp. 1-2), blatantly untrue claims that Metropolis abandoned after being presented with emails and an invoice between it and Rosenberg from 2017 (Compl. Ex. C at p. 2, Ex. D. at p. 1).[4]

---

[3] Specifically, after referring to Rosenberg's requests for information as "unreasonable demands" and a "nuisance," Door3's counsel wrote that "our client would be willing to look at the question with fresh eyes" if Rosenberg "would be willing to advance our legal fees," and that "for a retainer of $7,500 we could likely generate some kind of report/response." *Id.*
[4] If in fact Metropolis and the Developer had developed the Replacement Program without copying protectable aspects of the Application, it would have been in their interest to provide the information Rosenberg requested; it would have been simple to do so; and, presumably, it would

Based upon the foregoing, Rosenberg believed that Metropolis, through the Developer or on its own, developed the Replacement Program by reproducing and/or modifying protectable elements of the Application, including, without limitation: the Application's source code; the integration, presentation, and organization of data; data dictionary; inter-modular relationships; screens; reports; report generating processes; routines; and processes for integrating with New York City agency systems. *Id.* ¶ 35. Moreover, because certain key aspects of the Application's code were protected by Branding ("Branded"), and because Metropolis admitted that the Developer (apparently, a sophisticated computer security specialist) at a minimum attempted to access the Branded code, it is highly likely that Metropolis and/or the Developer circumvented the Branding protections to create the Replacement Program. *Id.* ¶ 37.

Having exhausted all reasonable avenues of due diligence, Rosenberg brought suit on June 1, 2018, against Defendants Metropolis, John Does 1-10, Jane Does 1-10, and XYZ Companies 1-10, alleging four causes of action: (i) copyright infringement; (ii) violation of the Digital Millennium Copyright Act; (iii) violation of the Defend Trade Secrets Act; and (iv) common law trade secret misappropriation under New York law.

## **ARGUMENT**

## I.   **LEGAL STANDARD**

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009). This rule "does not require 'detailed factual allegations.'" *Id.* (*quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). Under Rule 8, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what

---

have been cheaper than paying their attorneys to argue in correspondences with Rosenberg's counsel. Instead, they chose to hide that information from Rosenberg.

the . . . claim is and the grounds upon which it rests." *Lefkowitz v. McGraw-Hill Glob. Educ. Holdings*, LLC, 23 F. Supp. 3d 344, 353 (S.D.N.Y. 2014) (*quoting Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quotation omitted).  To survive dismissal, a complaint need only allege a plausible set of facts sufficient "to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555.  In other words, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 570).

"'A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *BWP Media USA Inc. v. Hollywood Fan Sites*, LLC, 69 F. Supp. 3d 342, 352 (S.D.N.Y. 2014) (*quoting Iqbal*, 556 U.S. at 678).  Notably, the *Twombly* plausibility standard "does not prevent a plaintiff from pleading facts alleged 'upon information and belief' where the facts are peculiarly within the possession and control of the defendant[,] or where the belief is based on factual information that makes the inference of culpability plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (*quoting Iqbal,* 556 U.S. at 678) (quotations & other citations omitted).

Additionally, "'In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.'" *Telephone Mgmt. Corp. v. Barclays Servs. Corp.*, No. 11 CIV. 8570 DAB, 2013 WL 1344706, at *4 (S.D.N.Y. Mar. 28, 2013) (*quoting DiFolco v. MSNBC Cable L.L.C.,* 622 F.3d 104, 111 (2d Cir. 2010)).

11

## II.   ROSENBERG HAS SET FORTH HIS COPYRIGHT INFRINGEMENT CLAIM WITH SUFFICIENT DETAIL

### A.   Governing Standards

"'In any suit for copyright infringement, the plaintiff must establish its ownership of a valid copyright, and that the defendant copied the copyrighted work.'" *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 963 (2d Cir. 1997) (*quoting Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 701 (2d Cir. 1992)).   In the context of computer programs, copyright law protects those aspects of programs that "incorporate authorship in programmer's expression of original ideas, as distinguished from the ideas themselves." *Altai*, 982 F.2d at 703 (citation & quotations omitted).   The literal elements of a computer program, *i.e.,* the source code and the object code, are without question protected by copyright law.   *Cognotec Servs., Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 862 F. Supp. 45, 49 (S.D.N.Y. 1994) (*citing Altai,* 982 F.2d at 702).   Copyright protection also extends to the "non-literal" elements of a computer program, *i.e.*, the "program's architecture or structure, including 'components such as general flow charts as well as the more specific organization of inter-modular relationships, parameter lists, and macros.'"   *Software for Moving, Inc v. Frid*, No. 09 CIV 4341 DLC, 2010 WL 2143670, at *3 (S.D.N.Y. May 27, 2010) (quoting *Altai*, 982 F.2d at 702); *see also Softel*, 118 F.3d at 963.

### B.   Defendant's Argument that Rosenberg Must Identify the Original Elements of the Application with Particularity Has No Legal Basis

Metropolis claims that Rosenberg fails to state a claim for copyright infringement because he does not allege precisely which parts of the Application "are the original, sufficiently creative copyrightable expressions that allegedly were copied unlawfully."   Mot. at 12. Metropolis argues that Rosenberg must identify exactly which parts of the more than 66,000 lines of code, 80 screens or forms, 40 reports and 300 related components of the Application are

and are not part of his infringement claim. *Id.* Metropolis' attempt to impose this heightened pleading requirement finds no support in the case law. Metropolis does not cite <u>any</u> decision suggesting that a plaintiff suing for infringement of its copyright in software must, in its pleadings, specifically identify the original and protectable elements of the software. That proposition is in fact contrary to this Court's precedent. *See Frid*, 2010 WL 2143670, at *3; *Cognotec Servs., Ltd.*, 862 F. Supp. at 50.

In *Frid*, plaintiff Software for Movers ("SFM") created a computer program to streamline operations for moving companies. *Frid*, 2010 WL 2143670, at *1. Defendant Frid obtained unauthorized access to and copied SFM's software to create a competing software program. *Id.* at *1-*2. SFM alleged that Frid "directly cop[ied] large portions" of the SFM program's "organization, structure, layout, report generation routines, field size design, transferred data forms, and number system." *Id.* at *2 (internal quotations omitted). After Frid moved to dismiss for failure to state a claim, the Court held SFM had sufficiently pleaded a claim of copyright infringement because SFM had alleged that Frid "gained access to copies of Moving Manager, lifted portions of Moving Manager's computer code, and copied elements of Moving Manager's structure" to create the infringing program. *Id.* at *3. While SFM would have to eventually "identify with particularity the copyrightable elements of Moving Manager that it contend[ed] were infringed in order to prevail on its claim," such particularity was <u>not</u> required at the motion to dismiss stage. *Id.*[5]

Similarly, in *Cognotec*, the plaintiff alleged that after it provided information about its computer program to the defendant, the defendant incorporated aspects of the plaintiff's program

---

[5] The Court further observed that SFM's claim, like Rosenberg's, was "not premised solely on [the] alleged copying of the . . . source code, but also certain non-literal elements of its structure[.]" *Id.*

into a document sent to third parties and developed new software that copied the plaintiff's program.  862 F. Supp. at 48-49.  Although the plaintiff did not specifically allege that the defendant had access to the source code of the computer program, the Court denied the defendant's motion to dismiss based upon that omission, holding that the plaintiff had met its burden because it (like Rosenberg) had also alleged infringement of the software's non-literal components.  *Id.* at 50.  The Court also rejected the defendant's argument that, in its pleadings, the plaintiff needed to identify the protectable elements of its computer program as opposed to its unprotectable ideas or functions, noting that "[t]o adequately consider [the defendant's] arguments would require a thorough and detailed factual exploration" of the software and that "[a] motion to dismiss is not the proper procedural mechanism to make this factual inquiry."  *Id.*

Here, Rosenberg has alleged that Metropolis reproduced and/or modified protectable elements of the Application, including, without limitation, "its source code; the integration, presentation, and organization of data; data dictionary; inter-modular relationships; screens; reports; report generating processes; routines; and processes for integrating with New York City agency systems."  Compl. ¶¶ 35-36.  A similar listing of copied software elements was held to satisfy the Rule 8(a) pleading requirement in *Frid*.  *See* 2010 WL 2143670, at *2 (alleging the defendant had copied the original software's "organization, structure, layout, report generation routines, field size design, transferred data forms, and number systems").  As in *Frid* and *Cognotec,* this case also involves both literal and non-literal copying.  Accordingly, Metropolis' contention that Rosenberg must specifically identify which protected elements of the Application Metropolis infringed, at this stage, is erroneous.  *See also*, *Home & Nature, Inc. v. Sherman Specialty Co.*, 322 F. Supp. 2d 260, 266 (E.D.N.Y. 2004) (explaining "[a] plaintiff is not required to assert exactly which individual elements of the copyrighted works were infringed").

**C.     Rosenberg Adequately Alleges the Acts by which
Metropolis Infringed his Copyright in the Application**

Metropolis also argues that Rosenberg has not alleged by which "acts" it infringed his copyrights.  Mot. at 12.  This argument is baseless.  Metropolis has admitted that it hired a developer to create a program to replace the Application and that the Developer had access to the Application, including the Application's source code, in creating the Replacement Program.  *E.g.*, Compl. ¶ 33; *id.* Ex. D at p. 3.  Rosenberg has alleged the Developer based the Replacement Program off of the Application, including, specifically, by copying aspects of the Application's "source code; the integration, presentation, and organization of data; data dictionary; inter-modular relationships; screens; reports; report generating processes; routines; and processes for integrating with New York City agency systems."  Compl. ¶¶ 35-36.  These allegations are more than sufficient to provide Metropolis with notice of Rosenberg's claim, and they easily meet the pleading standard.  *See Elektra Entm't Grp., Inc. v. Santangelo*, No. 05 CIV. 2414 (CM), 2005 WL 3199841, at *2 (S.D.N.Y. Nov. 28, 2005) (finding sufficient the plaintiff's allegations that defendant "has used, and continues to use, an online media distribution system to download the Copyrighted Recordings, to distribute the Copyrighted Recordings to the public, and/or to make the Copyrighted Recordings available for distribution to others"); *Home & Nature Inc.*, 322 F. Supp. 2d at 266-67 (finding sufficient the plaintiff's allegation that the defendant infringed one or more copyrights by "importing, causing to be manufactured, selling and/or offering for sale unauthorized tattoo-like jewelry items").[6]

---

[6] Metropolis cites *Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 206 F. Supp. 3d 869 (S.D.N.Y. 2016) to support its contention that the Complaint only pleads conclusory allegations. In *Gym Door Repairs*, in support of their copyright infringement claim against one of the defendants, the plaintiffs apparently <u>only</u> made the two conclusory allegations Metropolis quotes in the Motion, *i.e.*, that the defendant "made unauthorized copies of the Manufacturer Materials . . ." and "without the permission or consent of Plaintiffs, have made reproductions of

The bulk of Metropolis' argument on this point in fact conflates the concepts of copyright infringement and anti-circumvention. Metropolis argues,

> Plaintiff's central "facts" purportedly supporting an allegation of copying are that (a) Plaintiff used "Branding" to prevent a third party from reproducing his source code through decompilation using a program called "ReFox;" and (b) his Branding could be circumvented using a "cracked version" of ReFox that is supposedly available on the Internet. The "fact" that his purported protection can be circumvented by something available online is insufficient.

Mot. at 12 (internal citation and emphasis omitted); *see also* Mot. at 13 ("Plaintiff pleads no factual allegations showing that Metropolis used or commanded such circumvention, or even that its developer possessed the 'cracked version' of ReFox necessary to circumvent.").

Rosenberg's copyright infringement claim is not premised on the allegation that Metropolis and/or the Developer circumvented the Branding. As noted, Rosenberg alleges that Metropolis copied, in addition to the Application's source code, "the integration, presentation, and organization of data; data dictionary; inter-modular relationships; screens; reports; report generating processes; routines; and processes for integrating with New York City agency systems." Compl. ¶¶ 35-36. Copyright law protects those non-literal aspects of the Application as well as the literal aspects (*i.e.*, the source code). *Frid*, 2010 WL 2143670 (*quoting Altai*, 982 F.2d at 702); *Cognotec Servs., Ltd.*, 862 F. Supp. at 49.

Even as to the source code, and even assuming *arguendo* that Metropolis and the Developer never accessed the Branding-protected source code, the Branding only protected one portion of the Application's source code; the remainder of the source code could have been

all or significant portions of the Manufacturer Materials, emails and letters . . . ." *Id.* at 895. However, the plaintiff's slightly more specific allegation that another defendant was "making unauthorized copies of the plaintiffs' copyrighted staff training materials and using them to provide Safe Path training to its component districts, which paid [that defendant] for this service" was held to be sufficiently pleaded. *Id.* at 897. Rosenberg's allegations against Metropolis are vastly more detailed than both of the aforementioned claims. Moreover, as the Court stated in *Gym Door Repairs*, "[t]he Rule 8 pleading standard does not require detailed factual allegations[.]" *Id.* (quotations omitted). Rosenberg has exceeded that standard.

copied (and was copied) without any such circumvention. *See* Compl. ¶ 24 ("The Branding worked to prevent a third party from revealing or producing <u>key portions</u> of Rosenberg's source code . . . .") (emphasis added); *id*. Ex. D at p. 3 (Metropolis representing that the Developer "noticed <u>certain</u> source code" was protected) (emphasis added); *id*. Ex. E at p. 2 ("We suspect that the developer copied many different aspects of Mr. Rosenberg's software, including, but not limited to, that software's branded and non-branded code."). Rosenberg need not allege that Metropolis copied the entirety of the Application to state a claim for copyright infringement, only that it copied protectable elements. *See Lipton v. Nature Co.*, 71 F.3d 464, 469 (2d Cir. 1995) ("A successful claim of copyright infringement pursuant to the Copyright Act, 17 U.S.C. § 501 *et seq.*, requires proof that (1) the plaintiff had a valid copyright in the work allegedly infringed and (2) the defendant infringed the plaintiff's copyright by copying <u>protected elements</u> of the plaintiff's work.") (emphasis added); *see also, e.g., Rogers v. Koons*, 960 F.2d 301, 308 (2d Cir. 1992) ("[N]o copier may defend the act of plagiarism by pointing out how much of the copy he has not pirated . . . . Thus, where substantial similarity is found, small changes here and there made by the copier are unavailing.") (internal citation omitted); *Gal v. Viacom Int'l, Inc.*, 403 F. Supp. 2d 294, 307 (S.D.N.Y. 2005) (denying motion to dismiss because "obvious differences" or "certain dissimilarities between the works will not serve to automatically relieve the infringer of liability"). And if the Application constitutes an unauthorized <u>derivative work</u> of the Application, it necessarily will have substantial differences from the Application, but be no less actionable than a substantially similar copy. *See* 17 U.S.C. § 101 (defining "derivative work" to include, *inter alia*, "a work based upon one or more preexisting works" and "[a] work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship[.]").

17

For the same reasons, Metropolis' assertions that the Replacement Program is different in certain respects from the Application do not preclude liability.  *See* Mot. at 2 ("Metropolis asked the vendor to . . . make it possible for Metropolis to search its database using a person's name . . . [and] fix the new software so that a date appeared visually on one line instead of wrapping to the next line."); *see also* Mot. at 6; Compl. Ex. D, at 3-4 (claiming there were "multiple revisions the new program required in order to correct display issues and conform to Metropolis' requested formats and business needs"); Compl. Ex. F, at 2-3.  Those assertions by Metropolis, moreover, cannot be considered on a Rule 12(b)(6) motion to dismiss.  *See e.g., Dawkins v. Jones*, No. 03CIV.0068(DAB)(AJP), 2004 WL 574726, at *1 (S.D.N.Y. Mar. 22, 2004) (refusing to consider defendants' "alleged details about [plaintiff's] failure to exhaust" because "those 'facts' go beyond the complaint"); *Egletes v. Law Offices Howard Lee Schiff, P.C.*, No. 3:10-CV-00641 (CSH), 2010 WL 3025236, at *4-*5 (D. Conn. July 30, 2010) ("It goes without saying that the Court could not consider contrary factual allegations by Defendant on this motion to dismiss . . . .").  Those assertions by Metropolis are also plainly self-serving and cannot be credited.  Metropolis refuses to allow Rosenberg to view the Replacement Program, and refuses to answer even the most basic information about the Replacement Program, but instead picks and chooses what trivial information about the Replacement Program it wishes to divulge to try to make Rosenberg, and this lawsuit, go away.  *See* pages 7-9 *supra*.

## II.   ROSENBERG HAS STATED A DMCA CLAIM

Metropolis challenges Rosenberg's second cause of action, brought under the Digital Millennium Copyright Act ("DMCA"), on similar grounds as the copyright infringement claim, by arguing that Rosenberg fails to allege plausibly that Metropolis and/or the Developer unlawfully accessed the Application's Branded source code by circumventing a technological

measure that controls access to the software. *See* Def. Mot. at 15-16. Metropolis once again overstates the applicable pleading requirements. "As with a copyright infringement claim, there is no heightened pleading requirement that mandates detailed allegations" for DMCA claims. *Facebook, Inc. v. Power Ventures, Inc.*, No. C08-5780 JF (RS), 2009 WL 1299698, at *5 (N.D. Cal. July 23, 2009) (citation omitted).

To state a DMCA claim under the statute, Rosenberg need only allege facts showing that Defendant "circumvent[ed] a technological measure that effectively controls access to a work protected" by copyright law. 17 U.S.C. § 1201(a)(1). Metropolis does not dispute that the Branding is a technological measure effectively controlling access to a protected work, nor does Metropolis dispute that using a "cracked" version of ReFox to de-compile the Branded source code would constitute "circumvention" under the statute.[7]

Instead, Metropolis contends that Rosenberg has not sufficiently alleged that Metropolis and/or the Developer actually circumvented the Branding protections. *See* Mot. at 15-16. There is no merit to this argument. Rosenberg has alleged, "[u]pon information and belief, to accomplish the above-mentioned reproduction, alteration, and additions to the Application, Metropolis, through the Third-Party Developer or on its own, circumvented the Branding that Rosenberg applied to the Application," and he has identified the mechanism by which they most

---

[7] Under the DMCA, a technological measure "'effectively controls access to a work' if the measure . . . requires the application of information, or a process . . . with the authority of the copyright owner, to gain access to the work." 17 U.S.C. § 1201(a)(3)(B). Password protection and Branding qualify as "technological measures" under that definition, as they control access to certain key aspects of Rosenberg's source code by requiring the application of information or a process with Rosenberg's authority (*i.e.*, the entry of Rosenberg's password). *See e.g., Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 435 (2d Cir. 2001). Similarly, to "'circumvent a technological measure' means . . . to avoid, bypass . . . or impair a technological measure, without the authority of the copyright owner." 17 U.S.C. § 1201(a)(3)(A).

likely did so (*i.e.*, through the use of a "cracked" version of ReFox).  Compl. ¶¶ 26-27, 37; *see also id.* at ¶ 56.

That Rosenberg's allegations are made upon information and belief is of no moment. The *Iqbal/Twombly* plausibility standard "does not prevent a plaintiff from pleading facts alleged 'upon information and belief' where the facts are peculiarly within the possession and control of the defendant[,] or where the belief is based on factual information that makes the inference of culpability plausible."   *Arista Records*, 604 F.3d at 120 (*citing Iqbal,* 556 U.S. at 678) (quotations omitted; other internal citations omitted); *see also Elektra Entm't Grp., Inc.*, 2005 WL 3199841, at *3.   Given that Metropolis and the Developer have repeatedly refused to provide Rosenberg reasonable access to the Replacement Program to determine whether the Branded source code was decompiled and copied, the facts that would directly demonstrate that Metropolis and/or the Developer circumvented the Branding, and precisely how they did so, are "peculiarly within the possession and control" of Metropolis.   Moreover, the facts that are already known to Rosenberg suggest Metropolis' and the Developer's culpability.   These facts include Metropolis' admission that the Developer tried to view the Branded source code, as well as Metropolis' and the Developer's refusal to provide even the most basic information about the Replacement Program.   Coupled with information from a credible source that Metropolis intended to "just find someone to decompile" the Application and thereby avoid paying Rosenberg a license fee (Compl. ¶ 29), these facts form the basis of Rosenberg's information and belief, and support the inference of circumvention of the Branding.

## III.    ROSENBERG HAS ALLEGED A CLAIM FOR VIOLATION OF THE DTSA

Metropolis argues that Rosenberg does not state a sufficient claim for violation of the Defend Trade Secrets Act ("DTSA").   Def. Mot. at 16-18.   Metropolis asserts, first, that

Rosenberg has not pleaded use or intent to use his software in interstate commerce. That is untrue. Rosenberg specifically pleaded that he "has used and has intended to use the Original Software and/or derivative works based thereon in interstate commerce." Compl. ¶ 60. While Metropolis suggests that it has used the Application within New York State only (Mot. at 17), trade secrets protected by the DTSA are common to both the Original Software as well as the Application used by Rosenberg, and it is the Original Software, as well as derivatives thereof, that Rosenberg has used in interstate commerce and intended to use in interstate commerce. *See* Compl. ¶¶ 60-61. Metropolis has not satisfied the high bar applicable to this argument. *Yager v. Vignieri*, No. 16CV9367(DLC), 2017 WL 4574487, at *2 (S.D.N.Y. Oct. 12, 2017) (observing that "as the Second Circuit has recognized, Congress specifically crafted the commerce language in the DTSA to 'reach broadly in protecting against the theft of trade secrets'" and holding the "[plaintiff's] position that the DTSA covers trade secrets related to his plastic surgery practice, which he contends serves clients in interstate commerce, is at least colorable") (citation omitted); *see also United States v. Agrawal*, 726 F.3d 235, 244 n.7 (2d Cir. 2013).

Metropolis next claims that Rosenberg has not sufficiently alleged that Metropolis gained access to Rosenberg's trade secrets through improper means. *See* Mot. at 17-18. In this regard, it repeats its argument that Rosenberg did not properly allege circumvention of the Branding. *See id*. As noted above, that argument fails, as Rosenberg has met the pleading standing for circumvention. *See* pages 19-20 *supra*. Additionally, Rosenberg's DTSA claim is not exclusively premised on the circumvention of the Branding. The measures he took to protect his trade secrets also included, *inter alia*, his copyright notice prohibiting reproduction or disclosure of the Application, both of which restrictions Metropolis violated when it provided the Application to the Developer and when the Developer created the Replacement Program.

Metropolis further argues that because it had a license to use the Application, it had a right to access and do whatever it wanted with Rosenberg's trade secrets using lawful means. *See* Mot. at 17-18 ("Given that Metropolis had a license to use the software, a license granted by Plaintiff himself for each version he installed on Metropolis' system, there can be no 'improper means.'").  As noted above, Metropolis' assertion that it had a right to "access" the Application is a fabrication that is not stated anywhere in the Complaint.  *See* page 6 *supra*.  Moreover, the Application's copyright notice expressly belied any notion that Metropolis could hire a third-party developer to access the Application's trade secrets, as it stated that "[The Application] may not be reproduced, published, or disclosed to others without [Rosenberg's] authorization." *See* Compl. ¶ 16.

## IV.   ROSENBERG HAS STATED A CLAIM FOR COMMON LAW TRADE SECRET MISAPPROPRIATION

Finally, Metropolis argues that Rosenberg has not adequately pleaded New York common law trade secret misappropriation.  To state a claim for misappropriation of trade secrets under New York law, a plaintiff must show "(1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means," which occurred in bad faith.  *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 117 (2d Cir. 2009) (citation & quotations omitted).  Metropolis argues that Rosenberg has not sufficiently pleaded both elements.

Once again, Metropolis has overstated the pleading standard.  At the pleadings stage, a plaintiff need only "generally identify the trade secrets at issue,"  and need not plead the trade secret with specificity in the complaint.  *See Bancorp Servs., LLC v. American Gen. Life Ins. Co.*, No. 14-CV-9687 (VEC), 2016 WL 4916969, at *11 (S.D.N.Y. Feb. 11, 2016) (citation & quotations omitted); *see also Medtech Prods. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 789

22

(S.D.N.Y. 2008) (collecting cases denying motions to dismiss where trade secrets were not alleged with particularity and holding that "specificity as to the precise trade secrets misappropriated is not required in order for [the plaintiff] to defeat the present Motions to Dismiss"); *SD Prot., Inc. v. Del Rio*, 498 F. Supp. 2d 576, 586 (E.D.N.Y. 2007) (denying motion to dismiss, and explaining that the plaintiff "has no obligation to reveal those secrets in the Complaint simply to prove that they exist").

Here, Plaintiff has sufficiently alleged (i) the category of trade secrets to which he is entitled to protection, (*see* Compl. ¶¶ 68-69 ("Elements of the Original Software and Application are processes and compilations that confer upon Plaintiff a competitive advantage . . . such elements, including Plaintiff's source code, constitute trade secrets under New York law.")), (ii) that he took extensive measures to maintain the secrecy of this information, (*see id*. ¶¶ 16, 18–24, 28, 68), (iii) that "[s]uch elements are not known to individuals or entities other than Plaintiff" (*id*. ¶ 68); and (iv) that "[i]t took Plaintiff decades to develop the Application, including the source code, and it would similarly take a third party years, and hundreds of thousands of dollars (if not millions) to develop similar elements independently" (*id.*). These allegations more than plausibly claim that Plaintiff has trade secrets in the Original Software and the Application. Moreover, because Defendant has refused to allow Plaintiff to inspect the technical elements of the Replacement Program, the specifics of which elements of the trade secret were misappropriated are within Metropolis's possession and control and will be uncovered during discovery.

As to the second element of the claim, "breach of an agreement, confidential relationship or duty, or . . . discovery by improper means," *Faiveley Transp. Malmo AB*, 559 F.3d at 117 (citation & quotations omitted), Metropolis again falls back on its position that Rosenberg has

not adequately alleged circumvention of the Branding, and that it "had a license to use the software." Mot. at 19.  As explained above, Rosenberg's allegations regarding circumvention are more than sufficient, the misconduct by Metropolis in misappropriating Rosenberg's trade secrets was not limited to such circumvention (but also included disclosure of the Application to the Developer), and Metropolis' license to use the Application was not a license to access, and misappropriate, Rosenberg's trade secrets.  *See* pages 6, 19-22 *supra*.  Such allegations demonstrate both improper means and bad faith.  *Bancorp Servs., LLC,* 2016 WL 4916969, at *11 ("Improper means" generally refers to "means which fall below the generally accepted standards of commercial morality and reasonable conduct") (citation & quotations omitted).

Additionally, Rosenberg has adequately alleged that Metropolis has breached a confidential relationship.  Under New York law, "[f]or a breach of confidence claim to be established, plaintiff must show that the parties either stood in a relationship imposing a duty of trust or confidentiality, or that they entered into an agreement establishing such a confidential relationship." *Stewart v. World Wrestling Fed'n Entm't, Inc.*, No. 03 CV 2468 RLC, 2005 WL 66890, at *4 (S.D.N.Y. Jan. 11, 2005).  Rosenberg has pleaded that he provided services to Metropolis for more than a decade, and that the Application bore a copyright notice that, together with the license, governed Metropolis' use of the application, including giving Metropolis notice that the Application contained protectable elements and was not to be reproduced, published or disclosed to others.  *See C.D.S., Inc. v. Zetler*, 198 F. Supp. 3d 323, 338 (S.D.N.Y. 2016) (denying 12(b)(6) motion to dismiss and finding confidential relationship where former employee had access to plaintiff's trade secrets).  For this additional reason, the Court should deny Metropolis' motion to dismiss the common law trade secret misappropriation claim.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion in its entirety.  In the alternative, should the Court decide to grant part or all of the Motion, Plaintiff asks that he be given leave to amend his pleadings.[8]

Dated: New York, New York
September 17, 2018

PRYOR CASHMAN LLP

By: _S/ Robert J. deBrauwere_____
Robert J. deBrauwere
Joshua Weigensberg
Giovanna Marchese
7 Times Square
New York, New York 10036
Telephone: (212) 421-4100
Fax: (212) 798-6369
rdebrauwere@pryorcashman.com
jweigensberg@pryorcashman.com
gmarchese@pryorcashman.com
*Attorneys for Plaintiff Marshal Rosenberg*

---

[8] Even though Metropolis asks that dismissal be with prejudice (Mot. at 1), every one of its arguments is based on the notion that Rosenberg simply did not allege sufficient detail, and it has not set forth any grounds for why the purported pleading shortcomings could not be cured through an amended pleading.

25