UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
MARSHAL ROSENBERG,  :  Civ. Action No. 1:18-CV-04830-AKH
            Plaintiff,  :
          - against -  :
METROPOLIS GROUP, INC., JOHN DOES 1-10, JANE DOES 1-10, AND XYZ COMPANIES 1-10,  :
           Defendants.  :
------------------------------------------------------------------ x

## DEFENDANT METROPOLIS GROUP, INC.'S REPLY MEMORANDUM

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................................... ii

PRELIMINARY STATEMENT .....................................................................................................1

ARGUMENT ...................................................................................................................................2

I.   ROSENBERG'S COPYRIGHT INFRINGEMENT
     CLAIM IS NOT PLAUSIBLE ..........................................................................................2

II.  ROSENBERG'S DMCA CLAIM IS NOT PLAUSIBLE ................................................10

III. ROSENBERG'S TRADE SECRET MISAPPROPRIATION
     CLAIMS ARE NOT PLAUSIBLE ..................................................................................11

CONCLUSION ..............................................................................................................................13

# TABLE OF AUTHORITIES

**Cases**                                                                                                                        **Page(s)**

*Arista Records LLC v. Doe 3*,
    604 F.3d 110 (2d Cir. 2010) ................................................................................................ 8, 9

*Ashcraft v. Iqbal*,
    556 U.S. 662 (2009) .......................................................................................................... *passim*

*Ashland Mgmt. Inc. v. Janien*,
    82 N.Y.2d 395 (1993) ................................................................................................................ 11

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007) .......................................................................................................... 2

*Banco Indus. de Venezuela, C.A. v. CDW Direct*, LLC,
    888 F. Supp. 2d 508 (S.D.N.Y. 2012) ..................................................................................... 10

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................................ *passim*

*Broker Genius v. Zalta*,
    280 F. Supp. 3d 395 (S.D.N.Y. 2017) ...................................................................................... 11

*C.D.S. Inc. v. Zetler*,
    198 F. Supp. 3d 323 (S.D.N.Y. 2016) ...................................................................................... 12

*DiMaggio v. Int'l Sports Ltd.*,
    97 Civ. 7767 (RB), 1998 WL 549690 (S.D.N.Y. Aug. 31, 1998) ............................................ 7

*EarthWeb, Inc. v. Schlack*,
    71 F.Supp. 2d 299 (S.D.N.Y. 1999, *aff'd after remand*,
    No. 99-9302, 2000 WL 1093320 (2d Cir. May 18, 2000) ...................................................... 11

*Elektra Entm't Grp., Inc. v. Santangelo*,
    05 Civ 2414 (CM), 2005 WL 3199841 (S.D.N,Y. Nov. 28, 2005) ........................................ 10

*Gym Door Repairs, Inc. v. Young Equipment Sales, Inc.*,
    206 F. Supp. 3d 869 (S.D.N.Y. 2016) ........................................................................................ 9

*Julie Research Labs. Inc. v. Select Photographic Engineering Inc.*,
    810 F. Supp. 513 (S.D.N.Y. 1992), *aff'd in part, vacated
    in part on other grounds*, 998 F.2d 65 (2d Cir. 1993) ............................................................. 11

*Kelly v. L.L. Cool J.*,
  145 F.R.D. 32 (S.D.N.Y.1992), *aff'd,* 23 F.3d 398 (2d Cir.1994),
  *cert. denied,* 513 U.S. 950 (1994) ............................................................................. 7

*Lehman v. Dow Jones & Co.*,
  783 F.2d 285 (2d Cir. 1986) ..................................................................................... 11

*LivePerson, Inc. v. 24/7 Customer, Inc.*,
  83 F. Supp. 3d 501 (S.D.N.Y. 2015) .......................................................................... 7

*Marvullo v. Gruner & Jah*,
  105 F. Supp. 2d 225 (S.D.N.Y. 2000) ...................................................................... 10

*MLSMK Inv. Co. v. JP Morgan Chase & Co.*,
  737 F. Supp. 2d 137 (S.D.N.Y. 2010) ...................................................................... 10

*Securities and Exchange Commission v. Thompson*,
  238 F. Supp.3d 575 (S.D.N.Y. 2017) ......................................................................... 2

*Sheridan v. Mallindrodt, Inc.*,
  568 F. Supp. 1347 (N.D.N.Y., 1983) ....................................................................... 11

*Starr v. Sony BMG Music Entm't.*,
  592 F.3d 314 (2d Cor. 2010) ..................................................................................... 2

## Preliminary Statement

In its opening memorandum in support of its Motion to Dismiss, Defendant Metropolis Group, Inc. ("Metropolis") demonstrated that the Complaint of its disgruntled former computer consultant Marshal Rosenberg ("Rosenberg") must be dismissed under federal pleading standards because it was based on no more than rank speculation and conjecture. Simply put, Rosenberg alleged he was the only developer in New York who had developed software to assist expeditors like Metropolis, and therefore no competitive product could be developed without hacking his program. From that premise, and an alleged comment *13 years ago* by an unnamed "partner," relayed second hand to Rosenberg, that Metropolis might seek to decompile the program, Rosenberg leapt to the conclusion that Metropolis' software developer Door3 had infringed Rosenberg's copyrights, circumvented his technological measures and misappropriated his trade secrets in developing a new software application, on a modern-day platform, for Metropolis. In response to Metropolis' moving papers, Rosenberg argues that five pleaded purported "facts" raise his allegations from the realm of possibility to the necessary plausibility to meet the *Iqbal/Twombly* pleading standard. However, as we demonstrate below, none of these "facts" even if assumed to be true makes Rosenberg's claims plausible rather than merely possible.

Rosenberg further argues that because facts concerning how the new software was developed may be peculiarly within Metropolis' (and/or Door3's) knowledge, he is afforded greater leeway in meeting the applicable pleading standard of Fed. R. Civ. P. 8 and may rely on conclusory or speculative allegations made "on information and belief" without pleading sufficient facts that supply "information" supporting plausibility. We demonstrate below that Rosenberg's view is inconsistent with the controlling *Iqbal/Twombly* standard.

## ARGUMENT

### I.

### ROSENBERG'S COPYRIGHT INFRINGEMENT CLAIM IS NOT PLAUSIBLE.

As noted in our opening brief (at 7), to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief **above the speculative level**.'" *Securities and Exchange Commission v. Thompson*, 238 F. Supp. 3d 575, 587 (S.D.N.Y. 2017) (emphasis added) (*quoting ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint must allege "'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (*quoting Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (*quoting Twombly*, 550 U.S. at 570))). "A claim has facial plausibility when the plaintiff pleads **factual content** that allows the court to draw the **reasonable** inference that the defendant is liable for the misconduct alleged." *Ashcraft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Twombly*, 550 U.S. at 556) (emphases added).

In response to Metropolis' motion to dismiss, Rosenberg urges that five pleaded "facts" raise his claim above the speculative level and make it "plausible." None of them, either separately or in combination, does so.

First, Rosenberg relies heavily on his allegation that in 2005 (13 years ago) an unnamed "third-party contact" told him that a "new partner" in Metropolis had stated that he "might" "just find someone to decompile" Rosenberg's application rather than pay $300,000 to a vendor to create a replacement for it. (Complaint ¶ 29.) Such a double-hearsay allegation concerning a 13-year-old remark about what someone "might" do at that time is simply too vague and too remote

in time to make it plausible rather than speculative that Metropolis or its developer copied protectable elements of Rosenberg's software years later. This is particularly true where Rosenberg has intentionally chosen not to identify the third party or the alleged Metropolis "partner," or disclose whether the supposed "new partner" in 2005 was even still with Metropolis at the time the new software was developed. Rosenberg must know this information. He alleges that the unnamed third-party contact called him. Having worked as Metropolis' computer consultant for many years, he must also know who the "new partner" is.

Second, Rosenberg relies on his allegations that Metropolis declined to provide him certain information Rosenberg demanded concerning the new software application. (Complaint ¶¶ 38-41.) He urges that Metropolis might have done this to hide allegedly wrongful acts, and thus contends that such imagined wrongful acts are plausible rather than merely possible. However, Rosenberg fails to recognize that there is another explanation for Metropolis' reluctance to disclose information concerning the new software to Rosenberg that is entirely consistent with Metropolis' business interests and innocence of wrongdoing. Metropolis not only had no obligation to provide information to Rosenberg; it has a significant business interest in not providing it. After all, having spent significant sums to commission a new software application on a modern platform, Metropolis naturally would not want to give its old computer consultant – someone whose business is to help Metropolis' competitors – confidential information about a new software that could benefit Metropolis' competitors. If Metropolis did so, Rosenberg could use that software and knowledge to create a modern application for expeditors that Rosenberg could then sell or license to Metropolis' competitors, and possibly make it available to them sooner, limiting the market-place advantage Metropolis gained through its investment in modern software.

*Twombly* teaches that where there are multiple explanations for behavior, one consistent with wrongdoing and others consistent with lawful activity, merely alleging the behavior in question is not sufficient to show, or permit the inference of, plausibility rather than possibility. In *Twombly,* the plaintiff alleged a conspiracy among competitors in violation of Section 1 of the Sherman Act and argued that the competitors' parallel behavior satisfied the plausibility standard. However, the Supreme Court rejected that argument, noting that the parallel behavior was equally consistent with action in each defendant's individual business interests. 550 U.S. at 554-60. In other words, *Twombly* instructs that in determining plausibility courts should ***not*** draw an inference favorable to the plaintiff where one possible inference favors wrongdoing while others do not. Here, that instruction means that Rosenberg cannot rely on Metropolis' disinclination to provide him information concerning the new application to raise above the speculative level Rosenberg's otherwise insufficient allegations of wrongdoing.

Third, Rosenberg argues that plausibility may be gleaned from its allegation that Door3 has demanded that Rosenberg compensate Door3 for its legal fees before providing Rosenberg with information about the application it designed for Metropolis. (Complaint ¶¶ 42-44.) However, *Twombly* is dispositive here as well. While Door3's alleged conduct could be characterized as suspicious (the inference Rosenberg asks the Court to draw), the allegations could equally be viewed more benignly—as a non-party wanting advice of counsel before disclosing intellectual property it developed for Metropolis to (a) a competitor of Door3 and (b) its client's (Metropolis') former consultant. Door3's indication that it might provide information if Rosenberg "would be willing to advance [its] legal fees" is entirely consistent with its own interests. Door3 had no interest in paying lawyers to assist Rosenberg. In fact, its actions are more consistent with innocence than covering up wrongdoing. Indeed, Rosenberg admits that

Door3 initially offered to provide Rosenberg's counsel with some information but counsel declined. If Door3's motivation were to cover up wrongdoing, then it would have declined to provide any information at all. Thus, under *Twombly,* where Door3's conduct was at least equally consistent with innocence as with wrongdoing, if not more consistent with innocence, the Court may not draw an inference in favor of wrongdoing to find plausibility.

Fourth, Rosenberg seems to argue plausibility of his infringement and misappropriation theory may be derived from the allegation that "Upon information and belief, there is no commercially available product besides [his] Application that provides the utility, performance and efficiency required by Metropolis. (Complaint ¶ 34.) The proposition is simply not logical. That Metropolis may have had to engage a developer to create its new software application because there was no off-the-shelf commercially available product to meet its needs does not make it plausible that the developer infringed and misappropriated Rosenberg's intellectual property in performing its work. It is at least equally likely that Metropolis' replacement vendor performed its work lawfully and honestly.[1]

---

[1] Rosenberg's assertions that Metropolis has "admitted" that Door3 accessed Rosenberg's source code (Dkt. No. 27 at 3, 8) are inaccurate and fanciful. In support of that proposition, Rosenberg cites Metropolis' counsel's December 13, 2017 letter to Rosenberg's counsel annexed to the Complaint as Exhibit D. That letter clearly stated that the developer "reported to us that it could not and did not access any source code encrypted or password-protected by Mr. Rosenberg" and "did not access or see any Walled-Off Code through a decompiler or decompilation program," and that after noticing that the source code was behind Rosenberg's Branding, the developer "reported that it simply moved on with its commissioned work and wrote its own code to support Metropolis's business." (Complaint, Ex D, p. 3.) That is hardly an "admission" that the developer "accessed" the source code. Nor is it an "admission" that source code allegedly not walled-off, if there were any, was accessed. In any event, if there were any non-walled off source code it was available to Metropolis by virtue of the "license to use the Application" that Rosenberg admittedly granted. (Complaint ¶¶ 13, 15.)

Fifth, Rosenberg asserts that "one portion" (Dkt. No. 27 at 21) of his source code was protected by a technological protection measure that he calls "Branding," and that "the branding protections that Rosenberg employed can be circumvented through various means including the use of a 'cracked' version of ReFox (which can be obtained online)." (Complaint ¶¶ 25-26.) Based on these allegations, he argues that he has shown that it is *plausible* that Metropolis circumvented the Branding and copied, or wrongfully used, his source code. That is exactly the type of impermissible leap from possibility to plausibility that *Iqbal/Twombly* is intended to prevent. Indeed, if the Court were to accept Rosenberg's argument, any software developer could maintain a copyright infringement claim merely by alleging hacking without any more specific pleading; any antitrust plaintiff could maintain a complaint merely by imagining a price fixing conspiracy. *Iqbal/Twombly* would be stripped of any meaning. Rosenberg pleads no facts showing, for example, that Metropolis (or Door3) actually possessed a cracked version of ReFox or any other method of circumventing Rosenberg's Branding. Accordingly, if the mere existence of an online "cracked" version would suffice to plead infringement, Rosenberg could effectively achieve a monopoly by threatening any potential competitor with a federal lawsuit since any potential competitive product "might" rely on the online "cracked" version.

In sum, none of the "facts" Rosenberg relies on to raise his pleading of wrongdoing from speculation and possibility to the level of plausibility is capable of doing so. *A fortiori,* no combination of those "facts" can do so. If sufficient facts existed (but they do not) to support a copyright infringement claim, Rosenberg would have alleged them already in order to satisfy minimum pleading requirements. Rosenberg, however, not only cannot allege sufficient facts, but he even ignores the Second Circuit's copyright infringement pleading requirements and includes an irrelevant 2009 standard from the N.D. of California. To plead copyright

infringement sufficiently, this Court requires that a plaintiff allege "1) which specific original works are the subject of the copyright claim, 2) that plaintiff owns the copyrights in those works, 3) that the copyrights have been registered in accordance with the statute, and 4) by what acts during what time the defendant infringed the copyright." *Kelly v. L.L. Cool J.,* 145 F.R.D. 32, 36 (S.D.N.Y. 1992), *aff'd,* 23 F.3d 398 (2d Cir.1994), *cert. denied,* 513 U.S. 950 (1994). Courts in this District have used these factors for years, not the N.D. California factors Rosenberg cites.[2]

The *Iqbal/Twombly* standard is not excused or relaxed because facts are peculiarly within the knowledge of the defendant. That was the case in both *Twombly* and *Iqbal*. Plaintiff argues

---

[2] Rosenberg's attempt to escape the *Kelly* factors is surely based on his inability to satisfy the *Kelly* factors, particularly factors 1 and 4. Rosenberg says his copyright registrations permitting this lawsuit cover material back to 2002 that was created for another company, and that his copyright rights cover everything in that software and hundreds of updates for the next 15 years. This Court has held, however, that "allegations of 'nebulous multiple [works],' or vague averments that a defendant infringed 'any of' a number of works, are insufficient to plead a sustainable cause of action for infringement. *See DiMaggio v. Int'l Sports Ltd.*, 97 Civ. 7767 (RB), 1998 WL 549690, at *2 (S.D.N.Y. Aug. 31, 1998). Rosenberg does not let Metropolis know, with **any** level of specificity, what "processes, procedures, and code" left over from a 2002 program developed for one of Metropolis' competitors (and altered hundreds of times over the years) are relevant. And, with Rosenberg's logic that anything related to his software for expeditors must be infringing, any software that Metropolis could possibly use to run its own business would be an infringing derivative of his work.

Moreover, Rosenberg fails to let us know "during what time" the infringement occurred, and hints that it was anywhere from 2005 to 2017. "For the purposes of a motion to dismiss, courts evaluating the time of infringement element under *Kelly* consider whether the complaint, read in the light most favorable to the non-moving party, contains enough factual allegations to provide notice of the period of time during which infringement occurred." *LivePerson, Inc. v. 24/7 Customer, Inc.*, 83 F. Supp. 3d 501 (S.D.N.Y. 2015) (internal citations omitted). In *LivePerson*, this Court considered an allegation of a period of infringement "between 2006 when the parties began their contractual relationship and May 2014" when the first amended complaint was filed. The Court found that no time was specified, no period of infringement could "fairly be implied from the various allegations" in the complaint and exhibits, and that alleging the parties' contractual relationship began in 2006 did not provide sufficient notice to the defendant. *Id.* The Court also found no allegation in the complaint of the end of the infringement period, or that the infringement continued from 2006 to 2014. *Id.* Similar to the insufficient *LivePerson* complaint, Rosenberg's 2005 – 2017 time period is insufficient.

"[t]hat Rosenberg's allegations are made upon information and belief is of no moment." (Pl Mem at 20.) However, pleading on information and belief cannot supplant or avoid the *Iqbal/Twombly* plausibility requirement. As noted above (at 4), "information" must be pleaded that makes the allegation of wrongdoing plausible, not merely possible. A party cannot evade *Iqbal/Twombly* merely by asserting that the facts are peculiarly within the possession and control of the defendant as Rosenberg argues (Pl Mem at 20). In both *Twombly* and *Iqbal,* as Rosenberg alleges here, facts bearing on whether the defendant's conduct was wrongful or innocent would have been peculiarly within the possession of the defendants.[3] However, the Supreme Court nevertheless held that before plaintiff could proceed to discovery facts making wrongful conduct plausible must be alleged. The failure to make those allegations led to dismissal in *Iqbal* and *Twombly.* The same failure should lead to dismissal of Rosenberg's claim.

To justify his insufficient copyright allegations, Rosenberg also tries to rely on *Arista Records LLC v. Doe 3,* 604 F.3d 110 (2d Cir. 2010) (Dkt No. 27 at 11, 20) for the proposition that he may rely on allegations pled upon information and belief where the facts are peculiarly within the possession and control of the defendant. Such an argument is a red herring. Metropolis does not contend that allegations asserted upon information and belief may not

---

[3] *Twombly* held that the plaintiff had not plausibly alleged that the defendants had entered into an agreement in violation of Sherman Act § 1, based on the allegation that the defendants acted in parallel fashion. Whether or not defendants had entered into an agreement would have been peculiarly within the defendants' knowledge. However, the Supreme Court nevertheless adhered to the plausibility standard. 550 U.S. 553-68. Similarly, in *Iqbal,* the plaintiff alleged that the defendants (Attorney General Ashcroft and FBI Director Muller) adopted an unconstitutional policy that subjected him to harsh conditions of confinement on account of his race, religion, or national origin. The Court considered the complaint's sufficiency and held that Iqbal must plead sufficient factual matter to show that petitioners adopted and implemented the detention policies at issue not for a neutral, investigative reason, but for the purpose of discriminating on account of race, religion, or national origin. He was held to the plausibility standard even though the reasons for the detention policies were peculiarly within the defendant's knowledge. 556 U.S. at 677-86.

contribute to satisfy the *Iqbal/Twombly* standard, or are subjected to some heightened pleading. However, allegations asserted on information and belief are also not invested with special status. *Iqbal/Twombly*'s plausibility requirement must still be met; nowhere in *Arista Records* does the court state that pleading facts on information and belief eliminates or relaxes the *plausibility requirement* where facts are peculiarly within a defendant's possession or control.

Indeed, the facts in *Arista Records* demonstrate exactly how the combination of allegations made upon information and belief may be *joined* with specific allegations to meet the plausibility threshold. In particular, unlike Rosenberg's rank speculation about access and copying, Arista Records's complaint alleged numerous, very specific and individualized facts about the infringement, including the following: "at 'IP Address[] 169.226.226.24' at 2:15:57 a.m. on April 12, 2007, the 'PSP Network[ ] AresWarez' was in use' …'a total of 236 audio files were present in a file-sharing folder at that IP address at that time; and that among those files were the following songs [list of 6 songs with copyright owner, artist, recording title, and album titled for each of the 6]." *Id.* at 120. Such detail transforms allegations into plausible assertions; their absence (as is the case in the Complaint at bar) renders pleadings merely possible, and thus subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

Thus, Rosenberg's allegations, including those made on information and belief, must still make the infringement as well as the DMCA claims plausible, or the contentions are merely speculative and conclusory. As discussed above, the allegations come nowhere near to meeting the "plausible" threshold. Rosenberg's "facts" include "unadorned, the defendant-unlawfully-harmed-me accusation[s]" and allegations based on information and belief without any of the necessary details or reasonable evidence from which this Court could draw reasonable inferences. *Gym Door Repairs, Inc. v. Young Equipment Sales, Inc.*, 206 F. Supp. 3d 869 (S.D.N.Y. 2016)

9

(*quoting Banco Indus. de Venezuela, C.A. v. CDW Direct*, LLC, 888 F. Supp. 2d 508, 514-15 (S.D.N.Y. 2012) (*citing Iqbal*, 556 U.S. at 676)). *See MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 737 F. Supp. 2d 137, 144 (S.D.N.Y. 2010) ("Allegations may be made on information and belief when the facts are peculiarly within the knowledge of the defendants, **_but it is axiomatic that the complaint must allege facts demonstrating the basis for the information and belief_**." (citation and internal quotation marks omitted)), *aff'd in part*, 431 F. App'x 17 (2d Cir. 2011), and *aff'd*, 651 F.3d 268 (2d Cir. 2011).

Nor does *Elektra Entm't Grp., Inc. v. Santangelo*, 05 Civ 2414 (CM), 2005 WL 3199841 (S.D.N.Y. Nov. 28, 2005), on which Rosenberg also relies (Dkt No. 27 at 15, 20), support the proposition that pleading on information and belief avoids or relaxes the plausibility standard. That decision does not even address *Iqbal/Twombly*. It does, however, hold that "[a] properly plead copyright infringement claim must identify 'the particular infringing acts ... with some specificity. Broad, sweeping allegations of infringement do not comply with Rule 8." at *2, quoting *Marvullo v. Gruner & Jahr*, 105 F. Supp. 2d 225, 230 (S.D.N.Y.2000). Rosenberg's complaint does not begin to meet that standard. No particular acts are alleged whatsoever.

## II.

## ROSENBERG'S DMCA CLAIM IS NOT PLAUSIBLE.

The DMCA claim is based on circumvention of Rosenberg's technological protection measures — his "Branding." Its adequacy depends on adequately pleading that it is plausible, not merely possible, that Metropolis or Door3 did circumvent the Branding. As already detailed above (at 6), Rosenberg alleges that the means to circumvent Rosenberg's Branding are

10

potentially available. But allegations making it plausible that Metropolis or Door3 in fact obtained those means and used them is lacking.

Accordingly, Rosenberg's DMCA claim cannot withstand Metropolis' motion to dismiss.

### III.

### ROSENBERG'S TRADE SECRET MISAPPROPRIATION CLAIMS ARE NOT PLAUSIBLE.

Rosenberg's claims for violation of the federal Defend Trade Secrets Act and for common law trade secret misappropriation under New York law both depend on the notion that Metropolis obtained trade secrets belonging to, *and protected by*, Rosenberg. Although Rosenberg is far from specific concerning what the trade secrets cover, it is axiomatic that trade secrets are not protectable unless sufficient measures are taken to keep them secret. Indeed, the most important consideration in determining whether a trade secret exists is whether the information was kept secret. *Lehman v. Dow Jones & Co.*, 783 F.2d 285, 298 (2d Cir. 1986); *Broker Genius v. Zalta*, 280 F. Supp. 3d 495 (S.D.N.Y. 2017); *EarthWeb, Inc. v. Schlack*, 71 F. Supp. 2d 299, 314 (S.D.N.Y. 1999), *aff'd after remand*, No. 99-9302, 2000 WL 1093320 (2d Cir. May 18, 2000) *see Ashland Mgmt. Inc. v. Janien*, 82 N.Y.2d 395, 407 (1993). Disclosure to others without protection such as a confidentiality agreement or required steps or procedures to maintain their secrecy is "a fatal defect" for trade secret claims. *Julie Research Labs. Inc. v. Select Photographic Engineering Inc.*, 810 F. Supp. 513, 520 (S.D.N.Y. 19912), *aff'd in part, vacated in part on other grounds*, 998 F.2d 65 (2d Cir. 1993); *Sheridan v. Mallindrodt, Inc.*, 568 F. Supp. 1347, 1352 (N.D.N.Y. 1983).

In this case, Rosenberg can maintain trade secret claims only with respect to purported trade secrets that were hidden behind his "Branding." Any information outside Rosenberg's

11

Branding, and therefore available to Metropolis, could not be a trade secret because it was disclosed to Metropolis. Importantly, Rosenberg finally admits that only "one portion" of his source code was protected with that Branding; accordingly, every part other than that "one portion" was not concealed. (Dkt. No. 27 at 21.) Rosenberg nowhere alleges any confidentiality or other agreement with Metropolis providing that trade secrets were being disclosed to Metropolis and imposing an obligation to maintain their secrecy.

As established above (at 6) Rosenberg has not plausibly alleged that his Branding was breached. He merely alleges that means exist that would make breach possible. Absent pleaded facts plausibly demonstrating breach of Rosenberg's Branding, the trade secret claims must be dismissed. Because protectable trade secrets could only exist if they were maintained within Rosenberg's Branding, if Rosenberg does not plausibly allege that the Branding was breached, then trade secrets could not have been appropriated. Conversely, any information outside the Branding and available to Metropolis could not constitute a trade secret because Rosenberg failed to maintain its secrecy.

Rosenberg asserts that his trade secret claims are "not exclusively premised on the circumvention of the Branding" but also relied on language associated with his copyright notice stating that the Application may not be reproduced, published or disclosed to others without Rosenberg's authorization. (Dkt. No. 27 at 21, Complaint ¶ 16.) However, such labeling standing alone does not suffice to create trade secret protections for materials that were openly disclosed. For example, if the Coca Cola Company were to print its secret formula on each can of soda, and include the legend that Rosenberg affixed, would Coca Cola be able to claim the "secret" formula was still secret? Of course not. No trade secret protection would be warranted. Similarly, Rosenberg admits that materials unprotected by the Branding technological measure

12

were openly disclosed to Metropolis. In the absence of an allegation of a confidentiality agreement, these materials, once disclosed, lost trade secret protection (if any) to which they might otherwise have been entitled. Rosenberg's inclusion of a standard copyright notice cannot impose a confidentiality obligation not otherwise present. Nor has Rosenberg alleged that he and Metropolis stood in a relationship imposing a duty of trust or confidentiality. (*See* Dkt. No. 27 at 24.) As described in the Complaint, they were independent contractors in the relationship of licensor and licensee and/or consultant and client.

*C.D.S., Inc. v. Zetler*, 198 F. Supp. 3d 323 (S.D.N.Y. 2016), on which Rosenberg relies (Dkt. No. 27 at 24), is not on point here. In that case the defendant was the former president of the plaintiff. The court relied on authority holding that under New York law a former employee has a duty not to use his former employer's trade secrets against the employer. *Id.* at 338. No former employment relationship is involved here.

## CONCLUSION

For the foregoing reasons, and those set forth in Metropolis' opening brief, Plaintiff does not allege plausible claims for copyright infringement, violation of the DMCA, violation of the DTSA or New York common law trade secret misappropriation. His claims are based on nothing more that speculation that infringement or misappropriation occurred, fueled by his belief, rooted solely in his own hubris, that he is the only software developer on the planet that could possibly create a software application on a modern platform to replace his own application on the outdated, obsolete Visual Fox Pro platform.

Dated:  New York, New York
        September 28, 2018

                              Respectfully submitted,

                              TANNENBAUM HELPERN SYRACUSE
                                &HIRSCHTRITT LLP


                              By: /s/ L. Donald Prutzman

                              L. Donald Prutzman
                              Paul D. Sarkozi
                              Kristin G. Garris
                              900 Third Avenue
                              New York, New York 10022
                              212-508-6783
                              prutzman@thsh.com
                              sarkozi@thsh.com
                              garris@thsh.com
                                  *Attorneys for Defendant Metropolis Group, Inc.*