USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/17/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
:
MARSHAL ROSENBERG, :
: **ORDER DENYING**
Plaintiff, : **DEFENDANT'S MOTION TO**
-against- : **DISMISS**
:
METROPOLIS, INC., et al., : 18 Civ. 4830 (AKH)
:
Defendants. :
:
---------------------------------------------------------------- X

ALVIN K. HELLERSTEIN, U.S.D.J.:

    Plaintiff Marshal Rosenberg filed this suit on June 1, 2018, alleging that defendants unlawfully used a software application that plaintiff had licensed to defendant Metropolis, Inc. ("Metropolis") to create a replacement software application. Plaintiff claims copyright infringement, violation of the Digital Millennium Copyright Act ("DMCA"), violation of the Defend Trade Secrets Act ("DTSA"), and trade secrets misappropriation under New York common law. Metropolis moves to moves to dismiss all four claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons discussed herein, the motion to dismiss is denied.

## Background

    The following facts are taken from plaintiff's Complaint, which I must "accept[] as true" for the purpose of this motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff had developed a "software framework" for use in the provision of construction expediting services ("Original Software") by 2002. In or around 2003, plaintiff licensed to Metropolis a version of the Original Software, called "Metropolis – Metro.exe" ("Application"), designed for Metropolis's use in its construction expediting service. From that time until August 2017, when

plaintiff and Metropolis ceased doing business together, plaintiff "would regularly update, fix, and improve upon" the version of the Application then in use. Plaintiff has registered copyrights for: (i) the Original Software, (ii) the version of the Application first licensed to Metropolis in or around 2003, and (iii) the 2017 version of the Application that was the final version to be installed on Metropolis's system ("Final Application").

According to the Complaint, plaintiff spent decades developing the Application, including its source code, and it would take a third party "years, and hundreds of thousands of dollars (if not millions) to develop" processes and compilations similar to those found in the Application independently. Complaint, ECF No. 4, at ¶ 68 ("Compl."). The Application consists of "more than 66,000 lines of code, more than 80 screens or forms, more than 40 reports," *id.* at ¶ 14, and "more than 300 related components." *Id.* at ¶ 44. The Final Application contained the following notice: "Copyright © 2002-2017 – Marshal Rosenberg / All Rights Reserved." *Id.* at ¶ 16. The Application also contained a notice that the Application "may not be reproduced, published, or disclosed to others without [plaintiff's] authorization." *Id.* at ¶ 14. Certain elements of the Application, including its source code, were known only to plaintiff. *Id.* at ¶ 68.

Plaintiff used a program called ReFox to apply "branding protections" to certain portions of the Application's source code ("Branding Protected Elements"). Branding protections can be used to prevent third parties from engaging in unwanted "de-compilation," a process whereby a program's human-unreadable source code ("compiled code") is converted into human-readable source code ("de-compiled code"). *Id.* at ¶ 24. According to the Complaint, there were only two possible ways to de-compile and thereby access plaintiff's Branding Protected Elements: (i) accessing the password-protected version of ReFox licensed to

2

plaintiff or (ii) circumventing the branding protections, including by using a "cracked" version of ReFox, *i.e.*, an unlicensed and modified version of the program obtained online. *Id.* at ¶¶ 26-27.

In 2005, a third party informed plaintiff that a new Metropolis partner had expressed interest in replacing the Application. *Id.* at ¶ 29. Upon learning that paying a vendor to develop a replacement application would cost over $300,000, the partner stated that he might "just find someone to de[-]compile" the Application instead. *Id.* Metropolis's requests for maintenance of the Application "began to slow considerably" by the fall of 2015. *Id.* at ¶ 30. In June 2017, "immediately after" plaintiff installed the Final Application on Metropolis's system, Metropolis raised a "highly unusual" question as to who had authorized plaintiff to make the update. *Id.* at ¶ 31. In August 2017, Metropolis told plaintiff that it was discontinuing its use of the Application and replacing it with a new program ("Replacement Application"). *Id.* at ¶ 32. Metropolis informed plaintiff that the Replacement Application had been developed by a third party ("Third-Party Developer"). *Id.* at ¶ 33. Metropolis refused to identify the Third-Party Developer to plaintiff.[1] *Id.*

The Complaint alleges, upon information and belief, that "there is no commercially available product besides the Application that provides the utility, performance and efficiency required by Metropolis." *Id.* at ¶ 35. It further alleges:

> [T]hrough the Third-Party Developer or on its own, Metropolis reproduced and/or modified protectable elements of the Application, including, without limitation: its source code; the integration, presentation, and organization of data; data dictionary; inter-modular relationships; screens; reports; report generating processes; routines; and processes for integrating with New York City agency systems.

---

[1] According to the Complaint, the Developer "likely" is "a company doing business under the name Door3 Business Applications." Compl. ¶ 42.

3

*Id.* at ¶ 35. Finally, the Complaint alleges that Metropolis "made substantial alterations and additions to the Application" and "circumvented" plaintiff's branding protections in order to do so. *Id.* at ¶¶ 36-37.

## Discussion

In ruling on a motion to dismiss, the court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001), *as amended* (Apr. 20, 2001). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### A. Claim 1: Copyright Infringement

Plaintiff's first claim is that defendants infringed plaintiff's copyrights in the Original Software and the Application "by reproducing and modifying the Application in connection with the creation of the Replacement [Application]." *Id.* at ¶ 49.

"A properly pled copyright infringement claim must allege 1) which specific original works are the subject of the copyright claim, 2) that plaintiff owns the copyrights in those works, 3) that the copyrights have been registered in accordance with the statute, and 4) by what acts during what time the defendant infringed the copyright." *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36 (S.D.N.Y. 1992); *see also Jacobs v. Carnival Corp.*, 2009 WL 856637, at *4 (S.D.N.Y. Mar. 25, 2009) (noting that courts in the Southern District of New York "have

4

consistently followed the four-prong standard set forth in *Kelly*."). Metropolis argues that the Complaint makes insufficient factual allegations as to the first and fourth prongs.

Regarding the first prong, Metropolis is incorrect that plaintiff must allege which parts of the Application's "more than 66,000 lines of code, more than 80 screens or forms, more than 40 reports," Compl. ¶ 14, and "more than 300 related components," *id.* at ¶ 44, are the subject of his copyright claim. Although a plaintiff must "identify with particularity the copyrightable elements of [its program] that it contends were infringed in order to prevail on its claim, it need not plead such detail at [the motion to dismiss] stage of the litigation." *Software For Moving, Inc. v. Frid*, 2010 WL 2143670, at *3 (S.D.N.Y. May 27, 2010). The Complaint adequately alleges the specific works that are the subject of plaintiff's claim, namely the Original Software and the Application, including derivative works created therefrom as part of plaintiff's updates to Metropolis's version of the Application. Within those works, plaintiff specifically points to the "source code; the integration, presentation, and organization of data; data dictionary; inter-modular relationships; screens; reports; report generating processes; routines; and processes for integrating with New York City agency systems." Compl. ¶ 35. This is sufficient to provide fair notice to defendants of plaintiff's claim.

As to the fourth prong, Metropolis argues that the Complaint fails to allege sufficient facts to show by what acts and during what time Metropolis infringed plaintiff's

5

copyrights. The Complaint, however, alleges that Metropolis infringed plaintiff's copyrights by developing, on its own or through the Third-Party Developer, a Replacement Application, developed and implemented by August 2017, reproducing or modifying the protectable elements enumerated above and contained within plaintiff's Application. This is sufficient to withstand a motion to dismiss under the fourth *Kelly* prong and, because the Complaint also satisfies the other *Kelly* prongs, to state a claim for copyright infringement.

Metropolis also contends that the Complaint pleads insufficient facts to support circumvention of plaintiff's branding protections. That argument is addressed below in the context of plaintiff's other claims, but it is not relevant to whether plaintiff has pleaded adequate factual support for its copyright infringement claim. Clearly, expressions may be subject to copyright protection and infringement regardless of whether their author sought to restrict access to them through branding or other forms of encryption.

### B. Claim 2: Violation of the Digital Millennium Copyright Act

Plaintiff's second claim is that defendants violated 17 U.S.C. § 1201(a)(1)(A) of the DMCA by circumventing plaintiff's branding protections. § 1201(a)(1)(A) prohibits "circumvent[ing] a technological measure that effectively controls access to a work protected under this title." Metropolis asserts that "[p]laintiff has not alleged sufficient facts to make it plausible, rather than merely possible, that Metropolis's developer did, in fact, circumvent" the

branding protections plaintiff used to protect his Application. Metropolis's Memorandum of Law in Support of Motion to Dismiss, ECF No. 23, at 16.

Although it is a somewhat closer question than for Claim 1, the Complaint also states a plausible claim of circumvention under the DMCA. Several facts in the Complaint and its accompanying exhibits support plaintiff's claim. First, Metropolis had access to the compiled code of the Application that plaintiff licensed to it. ECF No. 1, Ex. D. Second, in 2005, a Metropolis partner expressed an interest in de-compiling the Application rather than paying to create a new program. Compl. ¶ 29. Third, "key portions" of the Application's source code were, or were part of, Branding Protected Elements. *Id.* at ¶ 24. Fourth, several elements of the Application are modified or reproduced in Metropolis's Replacement Application. *Id.* at ¶ 35. The court draws the reasonable inference that some degree of overlap exists between (i) the "key portions" of the source code that plaintiff made, or made part of, his Branding Protected Elements and (ii) the elements of the Application that plaintiff plausibly alleges were modified or reproduced, as discussed above. Fifth, there appears to be no explanation as to how those portions of the Application's source code were accessed, modified, or reproduced that is equally consistent with lawful conduct as with the mechanism suggested by plaintiff: de-compilation of the code, either with a "cracked" version of ReFox or by other means. Accordingly, I hold that plaintiff has made sufficient factual allegations to support a DMCA violation.

C.   **Claim 3: Violation of the Defend Trade Secrets Act**

Plaintiff alleges that defendants misappropriated plaintiff's trade secrets by acquiring his source code with knowledge that it was acquired by improper means, in violation of 18 U.S.C. § 1836(b). Metropolis moves to dismiss the claim on the grounds that plaintiff has

not adequately alleged (i) that the source code was "related to a product or service used in, or intended for use in, interstate or foreign commerce," 18 U.S.C. § 1836(b)(1), or (ii) that the trade secrets were acquired "through improper means." 18 U.S.C. § 1839(5).[2]

With respect to the interstate commerce element, "as the Second Circuit has recognized, Congress specifically crafted the commerce language in the DTSA to 'reach broadly in protecting against the theft of trade secrets.'" *Yager v. Vignieri*, 2017 WL 4574487, at *2 (S.D.N.Y. Oct. 12, 2017) (quoting *United States v. Agrawal*, 726 F.3d 235, 244 n.7 (2d Cir. 2013). The Complaint's allegation that plaintiff "has used and has intended to use the Original Software and/or derivative works based thereon in interstate commerce," Compl. ¶ 60, therefore is sufficient.

Metropolis's argument that plaintiff has not alleged acquisition through improper means partially mirrors its argument regarding circumvention in Claim 2. To the extent plaintiff alleges misappropriation of the Branding Protected Elements, Metropolis's motion to dismiss plaintiff's third claim is denied for the same reasons. To the extent plaintiff also alleges misappropriation of information *beyond* the Branding Protected Elements, *see* Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss, ECF No. 27, at 21 ("[Plaintiff's] DTSA claim is not exclusively premised on the circumvention of the Branding."), his factual allegations are also sufficient to state a claim under the DTSA. The Complaint alleges sufficient facts to show that plaintiff took "reasonable measures to keep such information secret," *see* 18 U.S.C. § 1839(3)(A), including: licensing the Application directly to Metropolis (rather than

---

[2] 18 U.S.C. § 1839(6) defines "improper means" as (A) includ[ing] theft, bribery, misrepresentation, *breach or inducement of a breach of a duty to maintain secrecy*, or espionage through electronic or other means; and (B) . . . not includ[ing] reverse engineering, independent derivation, or any other lawful means of acquisition" (emphasis added).

selling it or making it widely available), Compl. ¶ 13; including in the Application a notice that the Application "may not be reproduced, published, or *disclosed to others* without [plaintiff's] authorization," *id.* at ¶ 16 (emphasis added); and sending written notice to the Copyright Office that the Application's source code contains trade secrets, along with only a limited portion of the source code. *Id.* at ¶ 28. Under this analysis, defendants' alleged use of the Application's source code in the development of the Replacement Application supports a claim for trade secrets misappropriation under the DTSA, whether or not that source code was associated with Branding Protected Elements.

### A. Claim 4: Trade Secrets Misappropriation

The elements of a misappropriation of trade secrets claim under New York law are: "(1) that [the plaintiff] possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 117 (2d Cir. 2009). A showing of bad faith is also required. *Ferring B.V. v. Allergan, Inc.*, 4 F. Supp. 3d 612, 628 (S.D.N.Y. 2014) (citing *Abe's Rooms, Inc. v. Space Hunters, Inc.*, 38 A.D.3d 690, 692-93 (2d Dep't 2007)).

Metropolis first argues that plaintiff has not adequately alleged (i) breach of an agreement, confidential relationship, or duty, or (ii) that any such breach was in bad faith. As to both points, the pleaded facts are sufficient: that plaintiff made the Application available to Metropolis through a licensing agreement; that he included a non-reproduction and non-disclosure notice in the Application; that he applied branding protections to certain portions of

the source code; and that defendants, aware of these facts, nonetheless used the Application's source code in developing the Replacement Software.

Metropolis also argues that plaintiff has not described the trade secrets at issue with sufficient specificity. Numerous courts have cited with approval the statement in *Medtech Products Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 789 (S.D.N.Y. 2008) that, at the motion to dismiss stage, "specificity as to the precise trade secrets misappropriated is not required." *See, e.g., Next Commc'ns, Inc. v. Viber Media, Inc.*, 2016 WL 1275659, at *3 (S.D.N.Y. Mar. 30, 2016); *Bancorp Servs., LLC v. Am. Gen. Life Ins. Co.*, 2016 WL 4916969, at *11 (S.D.N.Y. Feb. 11, 2016); *Sorias v. Nat'l Cellular USA, Inc.*, 124 F. Supp. 3d 244, 258 (E.D.N.Y. 2015). The Complaint's identification of the Application's source code, along with its description of certain functional elements of the Application, is an adequate description of the trade secrets at issue at this stage in the proceedings. The Complaint therefore pleads sufficient facts to state a claim for trade secrets misappropriation under New York law.

## Conclusion

For the reasons stated herein, the motion to dismiss is denied. The clerk is ordered to terminate the motion (ECF No. 21). The oral argument, currently scheduled for November 15, 2018, is canceled. Defendants shall answer the Complaint by October 29, 2018. The parties shall appear for a status conference on November 30, 2018 at 10:00 a.m.

SO ORDERED.

Dated: October 17, 2018
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge