## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARSHAL ROSENBERG, | |
| Plaintiff, | ECF Cases |
| -against- | No. 1:18-cv-04830 (AKH) (BCM) |
| METROPOLIS GROUP, INC., A&N DESIGN STUDIO, INC. D/B/A DOOR3 BUSINESS APPLICATIONS, JOHN DOES 1-10, JANE DOES 1-10 and XYZ COMPANIES 1-10, | |
| Defendants. | |
| A&N DESIGN STUDIO d/b/a DOOR3 BUSINESS APPLICATIONS, | No. 1:18-cv-11291 (AKH) (SDA) |
| Plaintiff, | |
| -against- | |
| MARSHAL ROSENBERG, | |
| Defendant. | |

## MARSHAL ROSENBERG'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION TO DISMISS THE COMPLAINT OF <u>A&N DESIGN STUDIO D/B/A DOOR3 BUSINESS APPLICATIONS</u>

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ....................................................................................................................... 2

I.      The Declaratory Judgment Claims Must be Dismissed ........................................... 2

        A.      Door3 Filed the Declaratory Judgment Claims in Anticipation of
Being Added to the Lead Case and in Contravention of this Court's Directive ........ 2

        B.      The Declaratory Judgement Claims Must also be
Dismissed as Serving No Useful Purpose ................................................................ 3

        C.      The Claim For Declaration of Ownership is Contradicted by the MSA .................... 5

        D.      The Claim For Declaration of Non-Infringement is Inadequately Pleaded .............. 8

II.     The Tortious Interference Claim Must be Dismissed ............................................... 9

        A.      Rosenberg's Alleged Conduct is Non-Actionable as a Matter of Law .................... 9

        B.      Door3 Did Not Plead the Elements of the Tort ...................................................... 10

III.    Door3's Remaining Arguments Are Not Meaningful and, in Some Cases, Are False ..... 11

CONCLUSION .................................................................................................................. 13

## TABLE OF AUTHORITIES

**CASES**                                                                  **PAGE(s)**

*Amusement Indus., Inc. v. Stern*,
   693 F. Supp. 2d 301 (S.D.N.Y. Mar. 1, 2010)....................................................4, 5

*Brownstone Investment Grp., LLC v. Levey*,
   468 F. Supp. 2d 654 (S.D.N.Y. 2007)......................................................................8

*Carol Barnhart, Inc. v. Economy Cover Corp.*,
   773 F.2d 411 (2d Cir. 1985) ...................................................................................7

*Chicago Insurance Co. v. Holzer*,
   No. 00 Civ. 1062 (SAS), 2000 WL 777907 (S.D.N.Y. June 16, 2000) ...................3

*Dish Network, L.L.C. v. American Broadcast Cos.*,
   No. 12 Civ. 4155 (KNF), 2012 WL 2719161 (S.D.N.Y. July 9, 2012) ...................3

*Laxman v. Shapiro*,
   No. 06 Civ.11408 (DLC), 2006 WL 3423807 (S.D.N.Y. Nov. 29, 2006) ...............3

*Maverick Recording Co. v. Chowdhury*,
   Nos. CV-07cv200 (DGT), CV-07-640 (DGT), 2008 WL 3884350
   (E.D.N.Y. Aug. 19, 2008)........................................................................................4

*Newlight Eyewear, LLC v. Art-Optic, Ltd.*,
   No. 13 Civ. 5602 (PKC), 2014 WL 496877 (S.D.N.Y. Feb. 6, 2014) ....................8

*P. Kaufmann, Inc. v. Americraft Fabrics, Inc.*,
   232 F. Supp. 2d 220 (S.D.N.Y. 2002) ....................................................................9

*Plasticware, LLC v. Flint Hills Reserve, LP*,
   852 F. Supp. 2d 398 (S.D.N.Y. 2012) ..................................................................10

*Revise Clothing, Inc. v. Levi Strauss & Co.*,
   No. 10 Civ 5843 (DAB), 2010 WL 4964099 (S.D.N.Y. Dec. 6, 2010)...................3

*Rich v. Fox News Network, LLC*,
   322 F. Supp. 3d 487 (S.D.N.Y. 2018) ..................................................................10

*Rieger v. Drabinsky (In re Livent, Inc. Noteholders Securities Litigation)*,
   151 F. Supp. 2d 371 (S.D.N.Y. 2001) ....................................................................5

**CASES**                                                                      **PAGE(s)**

*Shapiro & Son Bedspread Corp. v. Royal Mills Associates*,
764 F.2d 69 (2d Cir. 1985) ...........9

*Smith v. BarnesandNoble.com, LLC*,
No. 12-cv-04374 (GWG), 2014 WL 1088955 (S.D.N.Y. Mar. 18, 2014) ...........4

*UBS Securities LLC v. Finish Line, Inc.*,
No. 07 Civ. 10382 (LAP), 2008 WL 536616 (S.D.N.Y. Feb. 22, 2008) ...........5

*Williams v. Broadus*,
No. 99 Civ. 10957 (MBM), 2001 WL 984714 (S.D.N.Y. Aug. 27, 2001) ...........5

*Wilton v. Seven Falls Co.*,
515 U.S. 277 (1995) ...........3

*Wright v. Ernst & Young LLP*,
152 F.3d 169 (2d Cir. 1998) ...........8

**STATUTES**

17 U.S.C. § 201(b) ...........6

**RULES AND REGULATIONS**

Fed. R. Civ. P. 8(a)...........1

Fed. R. Civ. P. 12(b)(1)...........1

Fed. R. Civ. P. 12(b)(6)...........1

Marshal Rosenberg ("Rosenberg") respectfully submits this reply memorandum of law in response to the opposition papers (the "Opposition" or "Opp.") filed by A&N Design Studio d/b/a Door3 Business Applications ("Door3") and in further support of his motion to dismiss Door3's complaint (the "Complaint" or "Compl."), with prejudice, pursuant to Federal Rules of Civil Procedure 8(a), 12(b)(1) and 12(b)(6) (the "Motion").[1]

## PRELIMINARY STATEMENT

The Motion set forth many independent grounds for dismissal of Door3's claims. They included that Door3's declaratory judgment claims were improperly filed and redundant of issues raised in Rosenberg's already pending case, and also that Door3 has not adequately pleaded any of its claims – because, *inter alia*, they are by turns belied by the contract annexed to the Complaint, based on entirely conclusory allegations, premised on facts that are non-actionable, or lack allegations supportive of all required elements.

Door3's Opposition fails to rebut Rosenberg's showing of his entitlement to dismissal. On some issues, Door3 offers no response whatsoever (*e.g.*, by failing to state how Rosenberg's enforcement of his copyright interests can be actionable on a tortious interference theory). On others, Door3 is evasive (*e.g.*, by refusing to admit or deny its counsel's awareness, when it filed its Complaint, of this Court's directive that Rosenberg promptly add it as a defendant to the lead case). Showing its appreciation of the inadequacy of its pleadings, Door3 submits new testimony with its opposition papers in the form of two declarations. Those declarations of course cannot be used to fix the defects in the Complaint, but they do reveal, through their own shortcomings, Door3's total inability to lay the necessary groundwork for its claims.

---

[1] The Motion was filed on February 14, 2019 on the docket for Door3's later-filed action (No. 1:18-cv-11291) (Dkt Nos. 15-17). The Court subsequently consolidated that action with Rosenberg's already-pending action (No. 1:18-cv-04830), on whose docket all subsequent filings in both actions are now being made.

## ARGUMENT

### I.   The Declaratory Judgment Claims Must be Dismissed

#### A.   Door3 Filed the Declaratory Judgment Claims in Anticipation of Being Added to the Lead Case and in Contravention of this Court's Directive

Door3 filed the Complaint mere hours after learning that this Court had directed, during the November 30, 2018 conference, that it be added as an additional defendant to Rosenberg's already pending action (the "Lead Case") by December 14, 2018 (the "November 30th Order"). Declaration of Robert J. deBrauwere in Support of Defendant's Motion to Dismiss the Complaint (Door3 Dkt. No. 17) ("deBrauwere Decl.") at ¶¶ 3, 5, Ex. B.  Door3 does not deny that it filed the Complaint upon learning of the November 30th Order.  Rather than abide by the Court's decision on how the parties' litigation would proceed, Door3 decided to "act first" and file its wholly unnecessary, additional action.

The Opposition is deliberately evasive on this point and offers no coherent excuse for Door3's misconduct.  Door3 refuses to state how and when its counsel found out about the November 30th Order, although it claims intimate familiarity with that order.[2]  It refuses to confirm or deny the admission by Mr. Prutzman (Metropolis's counsel of record) that he conveyed the November 30th Order to Door3's counsel hours before Door3 filed the Complaint.  *See* deBrauwere Decl. Ex. B at 1.  It gives no alternative explanation whatsoever for why it waited over six months after Rosenberg initiated his lawsuit against Metropolis, and over five months after Metropolis wrote it asserting a right of indemnification, to file its action for declaratory judgments and tortious interference with contract, which it now claims it had "no choice but to

---

[2] Feigning ignorance that it was about to be sued by Rosenberg, Door3 mischaracterizes the November 30th Order as a pseudo-scheduling order that merely set a deadline by which Rosenberg would need to add additional defendants. *E.g.*, Opp. at 1.  In fact, as the Court is aware, it ordered Rosenberg to add Door3 as a defendant (with a deadline of December 14, 2018); the Court further ordered Metropolis to produce its contract with Door3, so that Rosenberg could allege Door3's role with greater particularity.  Door3 denies these aspects of the November 30th Order, and has no competence to do so, as it did not attend the November 30th status conference (for which there is no transcript).

2

[file]." *See* Opp. at 9; Declaration of Raymond J. Dowd in Opposition to Defendant's Motion to Dismiss the Complaint (Lead Case Dkt. No. 56), Ex. A (letter dated June 22, 2018). Door3 filed the Complaint two business days after the Court issued its November 30th Order – *that* is the reason Door3 initiated its action.

The Court's pragmatic decision, during the pendency of the Motion, to consolidate the two cases and have all further filings made in the Lead Case, largely nullified the disarray caused by Door3's initiation of its related action. Lead Case Dkt. No. 54; Door3 Dkt. No. 19. Specifically, the consolidation eliminated the expense and inconvenience to Rosenberg of having to litigate related and identical issues in two separate actions and the prejudice to Metropolis which, despite having an interest in the issues raised in Door3's Complaint, was not made a party to Door3's later-filed action.

Regardless, this Court should not permit Door3's litigation misconduct to stand. Door3 admits, as it must, that it is entirely within this Court's discretion whether to exercise jurisdiction over its declaratory judgment claims. *See* Opp. at 13; *see also* Motion at 3-4 (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995); *Revise Clothing, Inc. v. Levi Strauss & Co.*, No. 10 Civ 5843 (DAB), 2010 WL 4964099, at *4 (S.D.N.Y. Dec. 6, 2010)). Door3 does not, and cannot, deny that courts will decline to exercise such discretion over declaratory judgment claims brought as improper anticipatory filings, *i.e.*, claims such as Door3's that are filed in response to a direct and imminent threat of litigation. *See* Motion at 4-5 (citing *Dish Network, L.L.C. v. American Broad. Cos.*, No. 12 Civ. 4155 (LTS) (KNF), 2012 WL 2719161, at *4 (S.D.N.Y. July 9, 2012); *Chicago Ins. Co. v. Holzer*, No. 00 Civ. 1062 (SAS), 2000 WL 777907, at *3-4 (S.D.N.Y. June 16, 2000); *Laxman v. Shapiro*, No. 06 Civ.11408 (DLC), 2006 WL 3423807, at *2 (S.D.N.Y. Nov. 29, 2006)). Door3's conduct in filing the Complaint was particularly egregious given that Rosenberg, pursuant to the November 30th Order, was certain to add Door3 as a defendant in the Lead Case imminently, and that by filing its action, Door3 undermined the November 30th Order. For this reason alone, its declaratory judgment claims should be dismissed.

B.   The Declaratory Judgement Claims Must also be
Dismissed as Serving No Useful Purpose

Door3 concedes that a claim for declaratory relief must be dismissed where it raises identical factual and legal issues as a pending coercive claim (*i.e.*, a non-declaratory judgment claim). *See* Opp. at 13 (citing *Smith v. BarnesandNoble.com, LLC*, No. 12-cv-04374 (ALC) (GWG), 2014 WL 1088955, at *1 (S.D.N.Y. Mar. 18, 2014)). It effectively admits that its claim for a declaration that it did not infringe Rosenberg's copyrights (its second cause of action) presents factual and legal issues that are identical to Rosenberg's claim that Door3 *did* infringe his copyrights. *See* Opp. at 14 (arguing only that its "first and third claims" do not present identical issues to Rosenberg's infringement claim). As Door3's own cited authority makes clear, its claim for a declaration of non-infringement must be dismissed as raising "legal and factual issues indistinguishable" from those in Rosenberg's infringement claim. *See Smith*, 2014 WL 1088955, at *2 (dismissing declaratory judgment claim where the defendant, responding to a copyright infringement claim, sought declaration of its non-infringement); *see also Maverick Recording Co. v. Chowdhury*, Nos. CV-07cv200 (DGT), CV-07-640 (DGT), 2008 WL 3884350, at *1 (E.D.N.Y. Aug. 19, 2008) ("The central issue in these cases is whether the defendants committed copyright infringement, and the defendants' counterclaim seeking a declaratory judgment that they did not is duplicative and entirely redundant.").

Door3's claim for a declaration as to its purported ownership in the software it created for Metropolis (the "Replacement Program") must also be dismissed as serving no useful purpose because it presents issues that, if they arise at all, can be decided in the course of litigating Rosenberg's infringement claim. *See* Motion at 4-7 (citing *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 301, 311-12 (S.D.N.Y. Mar. 1, 2010)).[3] As explained in the Motion, the issue of

---

[3] Citing *Smith*, Door3 claims that total identity of factual and legal issues is required for dismissal of a declaratory judgment claim. *See* Opp. at 13. That is not the law. *Smith* holds only that courts should dismiss declaratory judgment claims where there is identity of issues; it does not state courts may *not* dismiss declaratory judgment claims in other circumstances. *See Smith*, 2014 WL 1088955, at *1. The authorities cited in the Motion, to which Door3 offers no response, in fact provide that courts may dismiss declaratory judgment claims where the issues presented therein will be addressed in the course of resolving a pending coercive claim or where the pending coercive

Door3's copyright (if any) in the Replacement Program need only be addressed upon a finding of infringement. *See* Motion at 6-7 (citing *Williams v. Broadus*, No. 99 Civ. 10957 (MBM), 2001 WL 984714, at *5 (S.D.N.Y. Aug. 27, 2001)). Door3 fails to present any argument for why, if it is held *not* to have infringed Rosenberg's interests, it would still require a finding as to its ownership in any copyright in the Replacement Program. Its first declaratory judgment claim is entirely superfluous and should also be dismissed.[4]

Door3 argues that its declaratory judgment claims should nonetheless survive because it has also asserted an "independent controversy" in the form of its claim that Rosenberg tortiously interfered with its contract. Opp. at 15. Door3's tortious interference claim is, of course, a separate, coercive cause of action. Door3 cites no authority for its argument that a tort claim can breathe life into non-justiciable or superfluous declaratory judgment claims.

C.      The Claim For Declaration of Ownership is Contradicted by the MSA

Door3 has not plausibly pleaded its entitlement to a declaration that it owns the copyright in the Replacement Program because the plain language of its contract with Metropolis submitted as an exhibit to the Complaint (the "MSA") shows that Metropolis, not Door3, owns any such copyright. *See* Motion at 7-8 (citing cases); *see also Rieger v. Drabinsky (In re Livent, Inc. Noteholders Secs. Litig.)*, 151 F. Supp. 2d 371 (S.D.N.Y. 2001) (holding that "a court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by

---

claim presents "sufficient overlap of both the same events and subject matter." *See* Motion at 4-5 (citing *Amusement Indus., Inc.*, 693 F. Supp. 2d at 311-12; *UBS Secs. LLC v. Finish Line, Inc.*, No. 07 Civ. 10382 (LAP), 2008 WL 536616, at *4 (S.D.N.Y. Feb. 22, 2008)).

[4] For essentially the same reasons, there presently is no actual controversy regarding Door3's ownership claim. *See* Motion at 6-7. The controversy between Rosenberg and Door3 concerns Rosenberg's claim of *infringement*. Rosenberg has not and cannot yet identify what copyright interests Door3 has or does not have in the Replacement Program. *See* Motion at 6 (citing authorities). Moreover, despite its rhetoric that Rosenberg's infringement claim has "cast doubt on the ownership of Door3's software and code" (Opp. at 2), Door3 does not allege any injury from that purported uncertainty over ownership, such as an inability to license the Replacement Program, created specifically for Metropolis, to new clients.

documents upon which its pleadings rely . . .") (citations omitted).  As explained in the Motion,

Section 4.01 of the MSA provides that,

> All Deliverables are works made for hire, and work product shall belong
> exclusively to Client upon payment of all invoices related to any such
> Deliverable(s).

*See* Compl. Ex. A at Sec. 4.01 (also annexed, for ease of reference, as deBrauwere Decl. Ex. C

(Door3 ECF Dkt. No. 17-3)).  Door3 concedes that the Replacement Program is a "Deliverable"

under the MSA.  *See* Opp. at 16.[5]  As a work made for hire, the Replacement Program is thus

deemed to be authored, and its copyright owned, by Metropolis, the commissioning party.  17

U.S.C. § 201(b).  None of these points are disputed by Door3 in the Opposition.

The Motion also explained that Metropolis's ownership rights are alternatively established

by Section 4.01's language stating that,

> All rights, titles and interest, *including all intellectual property rights*, in and to all
> items, information, inventions and software developed, discovered, improved,
> authored, derived, or invented by DOOR3, relating to work for [Metropolis], are
> and shall be the exclusive property of [Metropolis].

Motion at 8 (citing MSA at Sec. 4.01) (emphasis added).  The Opposition does not address this

language at all, which, like the work-for-hire language that precedes it, vests ownership of any

copyright in the Replacement Program in Metropolis, not Door3.

Instead, Door3 points to two other provisions of the MSA that, by their plain terms, do not

create any ownership rights in the copyright in the Replacement Program for Door3.  First, it

suggests that it has such an ownership right by virtue of Section 4.01's provision that "*work

product* shall belong exclusively to Client upon payment of all invoices related to any such

Deliverable(s)."  *See* Opp. at 16 (emphasis added).  Door3 does not set forth any grounds for

---

[5] The MSA defines "Deliverables" as "deliverables provided to Client [Metropolis] in connection
with Services or as defined in a [statement of work], including Licensed Technology (as the case
may be)."  Door3 Compl. Ex. A at 1.  The MSA defines "Services" as "those certain technical
advice, consultations, project management, system design, software development, marketing
strategy, and ad hoc services provided by DOOR3 to Client [Metropolis]."  *Id.*

concluding that the term "work product" (which is not defined in the MSA) encompasses intangible intellectual property rights.  That position (*i.e.*, that "work product" implicitly includes copyrights, and that ownership thereof is contingent on payment) is contradicted by the aforementioned terms of Section 4.01, which *expressly* deal with copyright interests, and which provide that the Replacement Program is either a work made for hire (whose copyright is therefore owned *ab initio* by the commissioning party, Metropolis) or that Metropolis otherwise owns "all intellectual property rights" in the software developed by Door3.  *See* Door3 Compl. Ex. A at Sec. 4.01.

The second provision on which Door3 relies is Section 5.01, which deals with "DOOR3 Proprietary Information."  It provides,

> Title to Proprietary Information developed by Door3, including all ownership rights to patents, copyrights, trademarks and trade secrets and knowhow in connection therewith, *with the exception of any [D]eliverables completed at the request of [Metropolis]*, shall be the exclusive property of DOOR3.

Door3 Compl. Ex. A at Sec. 5.01 (emphasis added).  As noted, Door3 concedes that the Replacement Program is a "Deliverable" under the MSA, a conclusion required by the definitions set forth in the MSA itself.  *See* Opp. at 4, 16.  Thus, as the emphasized language above makes clear, Section 5.01 does not deal with ownership in the copyright in the Replacement Program (a conceded "Deliverable").  Rather, Section 4.01 (titled "Ownership of Deliverables") is the section of the MSA governing copyright in the Replacement Program and, for the reasons stated above, that section vests such copyright (if any) in Metropolis, not Door3.

Door3 argues that the Court should disregard the language of the MSA entirely because it has obtained a copyright registration, which it claims constitutes *prima facie* evidence of its ownership of the [Replacement Program]."  Opp. at 16-17 (referring to the analysis of the MSA – Door3's own contract – as a "red herring").  Any presumption of validity created by Door3's registration is, as a matter of law, rebuttable.  *See Carol Barnhart, Inc. v. Economy Cover Corp.*, 773 F.2d 411, 413 (2d Cir. 1985) ("a certificate of registration creates no irrebuttable presumption

of copyright validity.") (citation omitted).  Door3 has failed entirely to plead any facts plausibly demonstrating how its claim for a declaration of ownership could succeed given the plain language of the MSA vesting ownership in Metropolis.

    D.    <u>The Claim For Declaration of Non-Infringement is Inadequately Pleaded</u>

The Motion also showed that the declaratory judgment claim for non-infringement must be dismissed because the Complaint contained only boilerplate-style allegations of non-infringement and, specifically, failed to include any "representations regarding how Door3 developed its Replacement Program and how the Replacement Program differs from Rosenberg's software." *See* Motion at 9 (citing *Newlight Eyewear, LLC v. Art-Optic, Ltd.*, No. 13 Civ. 5602 (PKC), 2014 WL 496877, at *3-4 (S.D.N.Y. Feb. 6, 2014)).

The Opposition makes no attempt to defend that claim as sufficiently pleaded in the Complaint.  Instead, Door3 has tried to cure its pleading deficiencies by submitting new testimony, in the form of a declaration, with its opposition papers.  *See* Declaration of Alex Asianov (ECF Dkt. No. 55) ("Asianov Decl.").  Door3 cannot supplement its pleading deficiencies through testimony submitted in response to a rule 12(b)(6) motion.  *See, e.g., Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998); *Brownstone Inv. Grp., LLC v. Levey*, 468 F. Supp. 2d 654, 660 (S.D.N.Y. 2007) (explaining that "a complaint cannot be modified by a party's affidavit or by papers filed in response to a dispositive motion to dismiss or for summary judgment" and "giv[ing] no consideration" to affidavit and new exhibits submitted with opposition to motions to dismiss) (citations omitted).  Moreover, Mr. Asianov's newly submitted testimony does not set forth allegations tending to show that Door3 did not infringe Rosenberg's copyrights; to the contrary, Mr. Asianov admits to similarities between the Replacement Program and Rosenberg's software, including aspects that he deems the "copyrightable elements" of Rosenberg's software.  *See* Asianov Decl. ¶¶ 7-8.

**II.     The Tortious Interference Claim Must be Dismissed**

    A.     Rosenberg's Alleged Conduct is Non-Actionable as a Matter of Law

As the Motion established, a claim for tortious interference with contract cannot be premised on an alleged tortfeasor's efforts to protect his copyright interests. *See* Motion at 10 (citing cases). Specifically, a defendant cannot be held to have engaged in "intentional interference without justification," an element of tortious interference, where he has "[sought] to protect a copyright by alerting a third party that the copyright is being infringed." *P. Kaufmann, Inc. v. Americraft Fabrics, Inc.*, 232 F. Supp. 2d 220, 225 (S.D.N.Y. 2002); *see also Shapiro & Son Bedspread Corp. v. Royal Mills Assocs.*, 764 F.2d 69, 75 (2d Cir. 1985) (notification of customers of alleged infringement was not improper interference with business because "if in fact [plaintiff] has a valid copyright in the . . . design . . . sellers of infringing works may indeed be subject to certain sanctions.") (citation omitted).

The Opposition is entirely silent as to how Door3 can possibly maintain its tortious interference claim in light of the rule set forth in *P. Kaufmann, Inc.* and *Shapiro & Son Bedspread Corp.* (both of which decisions were cited in the Motion). Door3 must be deemed to have capitulated on the issue. Moreover, Door3 does not contest that Rosenberg holds valid copyrights in his own programs. While Door3 disputes Rosenberg's infringement claim, the Second Circuit has made clear that a copyright owner who seeks to enforce his interests cannot be held liable for tortious interference even if he ultimately fails to prove infringement. *See Shapiro & Son Bedspread Corp.*, 764 F.2d at 75 ("Royal also contends that in view of the alleged invalidity of Shapiro's copyright claim, Shapiro's actions in notifying Royal's customers that Royal was infringing Shapiro's copyright and that this could have adverse legal consequences for sellers of Royal's allegedly infringing product unlawfully interfered with Royal's business . . . [H]owever, Shapiro's actions were not improper, since if in fact Shapiro has a valid copyright in the Lace Fantasy design, as may prove to be the case, sellers of infringing works may indeed be subject to certain sanctions.") (citations omitted). Door3 cannot maintain its tortious interference claim as a matter law.

B.     Door3 Did Not Plead the Elements of the Tort

As explained in the Motion, the Complaint also fails to allege any facts showing (a) Metropolis's actual breach of a contract with Door3 or (b) damages resulting from said breach, two of the elements of tortious interference with contract.  *See* Motion at 10-11.  To the contrary, Door3 pleaded only an *accusation* by Metropolis that *Door3* breached the parties' contract – and Door3 cannot premise a tortious interference claim on its *own* breach of contract.  *See id.* (citing *Plasticware, LLC v. Flint Hills Res., LP*, 852 F. Supp. 2d 398, 404–05 (S.D.N.Y. 2012)).

The Opposition does not point to any facts pleaded in the Complaint that would show how Door3 has satisfied the breach and damages elements of its tortious interference claim.  Instead, in arguing that "the Complaint allege[d]" facts that "sufficiently state a claim for tortious interference," Door3 cites misleadingly and exclusively to *the declarations of Messrs. Asianov and Dowd submitted with the Opposition*.  *See* Opp. at 17; *see also* Opp. at 18 (same).  As noted above, Door3 cannot, as a matter of law, cure its pleading deficiencies through testimony submitted with the Opposition, and its citation to such new testimony as purported evidence of the sufficiency of its *Complaint* is particularly egregious.

To be clear, even taking such newly submitted testimony into account, Door3 *still* has failed to properly allege breach or damages.  Nowhere in its papers does Door3 claim that Metropolis's newly alleged "fail[ure] to complete payment" (Asianov Decl. ¶ 9) constituted a breach of the parties' agreement.  Mr. Asianov also does not state whether Metropolis's alleged failure to pay in full was in fact caused by any action by Rosenberg.  Door3 does not state the amount, if any, Metropolis still owes it, or point to any other damages it may have incurred other than its entirely vague claim that its "contractual relations" with Metropolis have been "impaired." *See*, *e.g.*, Opp., at 1, 17.  Its newly submitted allegations make clear not only that Door3 did not adequately plead its tortious interference claim in its Complaint (because otherwise Door3 would have no need to submit Mr. Asianov's new testimony), but also that it *cannot* properly plead breach or damages.  *See*, *e.g.*, *Rich v. Fox News Network, LLC*, 322 F. Supp. 3d 487, 503 n.9 (S.D.N.Y.

10

2018) (dismissing tortious interference claim where the plaintiffs failed to "specifically identif[y] damages that [were] attributable to Defendants' interference" and instead provided only the "conclusory assertion that they 'suffered significant damage as a result of th[e] interference'").

### III.   Door3's Remaining Arguments Are Not Meaningful and, in Some Cases, Are False

Door3 litters its opposition papers with a number of legal arguments and factual assertions that do not respond to arguments raised in the Motion and, at times, are demonstrably untrue.

Part of the Opposition is spent arguing that Door3's action has "priority" under the "first-filed doctrine" and that the "balance of convenience" would favor the non-dismissal of Door3's action. *See* Opp. at 8-9, 12-13.  Those arguments are not responsive to any grounds for dismissal: regardless of whether Door3's Complaint was "first-filed," it must be dismissed because, *inter alia*, it was inadequately pleaded and brought as an improper anticipatory filing.  *See supra*.[6] Those arguments, which are addressed to choice of forum issues, are also unintelligible here, where both cases were filed in the same Court, before the same judge, and have since been consolidated (*i.e.*, there is not and never has been any dispute over the forum in which the two actions should proceed, and the actions have since been merged for all practical purposes).

Other parts of the Opposition are spent disparaging Rosenberg's software as purportedly containing "worthless twenty (20) year-old code" (Opp. at 1) written in an "outdated programming language . . . only compatible with older versions of the Windows operating system and therefore discontinued in 2007" (Asianov Decl. ¶ 5).  None of those factual claims by Door3 have any bearing on the Motion, and they are false.  *See*, *e.g.*, Amended Complaint (Lead Case Dkt No. 37) at ¶¶ 13-17 (stating that Rosenberg developed his software in 2002 and thereafter refined it over the course of "more than a decade").  At the proper time in this litigation, Rosenberg will refute those falsehoods casually submitted to this Court by Door3's counsel and by Mr. Asianov.

The Opposition also contains a number of allegations of Rosenberg's supposed litigation improprieties, all of which are either unsubstantiated or deliberately ignore the facts in the record,

---

[6] Door3 in fact admits that the first-filed rule does not apply to an improper anticipatory filing. *See* Opp. at 10-11.

and none of which have any relevance to the Motion.  Door3 accuses Rosenberg of, for example, "deceptively fail[ing] to name DOOR3 as a defendant."  In fact, Rosenberg was *unable* to add Door3 as a defendant until the Court ordered Metropolis to produce the MSA as part of the November 30th Order, because until that point Rosenberg did not have sufficient information about Door3's involvement in developing the Replacement Program – largely because Metropolis and Door3 refused to produce the MSA and, in pre-litigation correspondence, refused even to identify Door3 as the developer of the Replacement Program.  *See* Amended Complaint at ¶¶ 35-37, 42, 44-47, Exs. B-F.[7]

Door3 also continues to cry foul regarding Rosenberg's rejection of its (bad faith) offer to inspect the source code – and only the source code – of the Replacement Program.  *See, e.g.*, Opp. at 2.  As Rosenberg explained from the very outset of his action, Door3's proposal was never productive or practical, since it would require in-person inspection of tens of thousands of lines of source code (which Door3 improbably claimed could be accomplished "in the space of an hour").  *See* Rosenberg Complaint (Lead Case Dkt. No. 4) at ¶¶ 43-44; Door3 Complaint (Door3 Dkt. No. 1) Ex. E at 1.  Door3 refused to provide Rosenberg with any other information about the Replacement Program unless it paid a "retainer of $7,500," and it referred to Rosenberg's requests for such additional information as "unreasonable" and a "nuisance."  *Id.*  Door3's restrictive offer was particularly paltry and inapt given that Rosenberg's claims are not merely based on alleged literal copying of Rosenberg's source code, but also on *non*-literal copying of his software as well as copying of other protectable elements such as, *inter alia*, the integration, presentation, and organization of data, data dictionary, screens, and more.  *See* Rosenberg Complaint at ¶ 38; *see also* Order Denying Defendant's Motion to Dismiss (Lead Case Dkt. No. 30) at 4 (denying Metropolis's motion to dismiss because, among other reasons, Rosenberg adequately pleaded that

---

[7] Door3 also provides no coherent explanation for how Rosenberg's choice to gather more facts before suing Door3 was "deceptive[]" or gave Rosenberg any unfair advantage.

the specific works subject to his copyright claim included a wide variety of aspects of his software (*i.e.*, not just its source code)).[8]

## **CONCLUSION**

For the foregoing reasons and those set forth in the moving papers, it is respectfully submitted that Rosenberg's motion to dismiss should be granted in its entirety and the Complaint should be dismissed, with prejudice.


Dated:  New York, New York          Respectfully Submitted,
          March 7, 2019

                                                     S/ Robert J. deBrauwere
                                         Robert J. deBrauwere, Esq.
                                         Joshua A. Weigensberg, Esq.
                                         Giovanna M. Marchese, Esq.
                                         PRYOR CASHMAN LLP
                                         7 Times Square
                                         New York, NY 10036
                                         (212) 421-4100
                                         rdebrauwere@pryorcashman.com
                                         jweigensberg@pryorcashman.com
                                         gmarchese@pryorcashman.com
                                         *Attorneys for Marshal Rosenberg*

---

[8] Door3's criticisms as to the sufficiency of Rosenberg's pre-litigation diligence are especially misplaced where this Court, in its October 17, 2018 order, held that Rosenberg had alleged his infringement and misappropriation claims with sufficient particularity.